IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:23-CV-290-M

| | | |
|---|---|---|
| JAMES ZOW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER AND |
| v. | ) | MEMORANDUM AND |
| | ) | RECOMMENDATION |
| BOARD OF GOVERNORS OF THE | ) | |
| UNIVERSITY OF NORTH CAROLINA, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the following motions: Defendants' motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1), (2), (4), (5), and (6), [DE-50]; and Plaintiff's motion to drop newly added defendants in amended complaint, [DE-53], motion for leave to file a surreply in opposition to the motion to dismiss, [DE-91], and motions for default against Defendants Peter Hans and Michael Hill, [DE-92, -93]. Plaintiff filed a response opposing dismissal, [DE-82], and Defendants filed a reply, [DE-86]. Defendants filed a response indicating their consent to Plaintiff's motion to drop newly added defendants. [DE-62]. Defendants did not respond to Plaintiff's motion to file a surreply, and the time to do so has expired. Defendants oppose the motions for default. [DE-95, -96]. The motion to dismiss and motions for default are referred to the undersigned for a memorandum and recommendation to the district court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civ. R. 72.3(c)(1), E.D.N.C, and the remaining motions are referred for disposition. For the reasons that follow, the motion to drop defendants from the amended

complaint and the motion for leave to file a surreply are allowed, and it is recommended that the motion to dismiss be allowed and the motions for default be denied as moot.

## I.    Background

Plaintiff James Zow brings this action against the Board of Governors of the University of North Carolina (the "Board"), North Carolina Central University ("NCCU"), Peter Hans in his official capacity as President of the University of North Carolina System and in his individual capacity, Johnson Olatunde Akinleye in his official capacity as Chancellor of NCCU and in his individual capacity, Michael E. Hill in his official capacity as Chief Human Resources Officer of NCCU and in his individual capacity, Randy Ramsay in his official capacity as Chair of the Board, Wendy Floyd Murphy in her official capacity as Vice Chair of the Board, Pearl Burris-Floyd in her official capacity as Secretary of the Board, Woody White in his official capacity as Member of the Board, and Michael Williford in his official capacity as Member of the Board, along with 16 additional individual members of the Board. *See generally* Am. Compl. [DE-23].

Zow was employed as Chief of Staff to NCCU Chancellor Akinleye and as Assistant Secretary to the NCCU Board of Trustees from January 2018 until his employment was terminated on October 1, 2021. *Id.* ¶¶ 102, 192. On April 19, 2021, NCCU's Covid-19 Operations Continuity Committee ("COCC") considered whether to implement a mandatory vaccination policy for students, faculty, and staff at NCCU. *Id.* ¶ 7. The COCC voted 20-1 to mandate vaccinations, with Zow being the only dissenting vote based on his belief that a mandatory vaccination policy would be unlawful. *Id.* ¶¶ 8–9. The following day, however, Zow persuaded Akinleye not to approve the COCC's recommendation to mandate a Covid-19 vaccination policy on the NCCU campus. *Id.* ¶¶ 10–11. Zow alleges that his actions on April 19 and 20 against implementation of a mandatory vaccination policy were protected activity for which he was retaliated against

2

beginning on May 5, 2021, until his employment was ultimately terminated on October 1, 2021.
*Id.* ¶¶ 13–15.

Zow alleges he was subjected to the following ten "material adverse actions": (1) on May 5, 2021, Chief Human Resources Officer Michael Hill ordered a "bogus" investigation of Zow related to a disciplinary action Zow took against the Assistant to the Chief of Staff seven months prior, *id.* ¶¶ 128–32; (2) on June 14, 2021, Akinleye removed Zow's supervisory authority over three of the four employees that directly reported to Zow, *id.* ¶¶ 133–34; (3) on June 24, 2021, Zow received a written warning by email from Akinleye regarding "a purported 'misunderstanding' of the obligations of the Chief of Staff," a position Zow had performed successfully for four years, *id.* ¶¶ 135–36; (4) on June 25, 2021, Human Resources employee Delores Harris emailed Zow a "Notice of Outcome" regarding the investigation of the disciplinary action Zow took against the Assistant to the Chief of Staff, and Zow filed a Grievant Appeal against Hill to preserve his right to challenge the retaliatory action, *id.* ¶¶ 137–39; (5) on July 12, 2021, Zow returned from vacation and responded in more detail to Akinleye's June 24 written warning, and Akinleye responded with "verbal animus and discriminatory intent" against Zow related to his vaccination status, which Akinleye was prohibited by law from inquiring about, *id.* ¶¶140–41; (6) on September 7, 2021, a letter from Akinleye was placed under Zow's office door stating that Zow violated a Travel Memo issued by Hill on August 5, 2021, which required unvaccinated employees who had travelled domestically to self-quarantine for seven days after travel and to produce a negative PCR Covid-19 test to Human Resources in order to return to work, and Zow was banned from NCCU campus for not producing a negative test, *id.* ¶¶ 148–50, 163; (7) on September 7, 2021, Harris "arbitrarily and capriciously" rejected Zow's PCR medical exemption affidavit after a different Human Resources employee accepted a similar medical exemption affidavit from Zow

two weeks earlier, *id.* ¶¶ 165–72; (8) on September 14, 2021, Akinleye telephoned Zow while Zow was on approved sick leave, questioned Zow about the status of the information required by the Travel Memo, warned Zow that Zow was placing his job in jeopardy, and responded angrily when Zow said that he would exercise his employee rights for the illegal actions of the NCCU Human Resources employees, *id.* ¶¶ 182–85; (9) on September 29, 2021, while still on sick leave, Zow received a letter dated September 23, 2021 from Human Resources employee Maggy Sivansay threatening disciplinary action up to dismissal for Zow's failure to produce a negative Covid-19 test after travel, and Zow objected to misrepresentations and inaccuracies in the letter, *id.* ¶ 190; and (10) on October 1, 2021, Akinleye terminated Zow, *id.* ¶ 192. Zow filed a charge with the Equal Employment Opportunity Commission ("EEOC") on July 14, 2022, and was issued a right to sue letter, which he received on March 2, 2023. *Id.* ¶¶ 326–27.

Zow asserts claims for free speech retaliation and wrongful termination in violation of 42 U.S.C. § 1983 against NCCU, Akinleye, and Hill (Count I); wrongful discharge in violation of the North Carolina Constitution Article I § 1 against NCCU and Akinleye (Count II); wrongful retaliatory termination in violation of the Equal Protection Clause of the North Carolina Constitution Article I § 19 against NCCU, Akinleye, and Hill (Count III); tortious interference with economic relations against NCCU and Akinleye (Count IV); violation of the right to refuse unwanted and medically unnecessary care against NCCU, Akinleye, and Hill (Count V); violation of the emergency use authorization provisions of 21 U.S.C. § 360bbb-3 against all Defendants (Count VI); retaliation in violation of the Americans with Disabilities Act ("ADA") against NCCU, Akinleye, and Hill (Count VII); violation of N.C. Gen. Stat. § 116-11 against the Board, Hans, and Akinleye (Count VIII); and violation of N.C. Gen. Stat. § 130A-152 against the Board, Hans, and NCCU (Count IX). *Id.* ¶¶ 203–325. Zow seeks a declaratory judgment, compensatory

4

and punitive damages, and reinstatement of fringe benefits, seniority, and vesting rights under North Carolina law. *Id.* at 86–88.

In response to the amended complaint, Defendants filed the instant motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1), (2), (4), (5), and (6), on the grounds of sovereign and Eleventh Amendment immunity; improper process, improper service, and lack of personal jurisdiction; and failure to state a claim. [DE-50]. Plaintiff subsequently filed a motion to drop 21 individual defendants[1] who were added in the amended complaint, which is unopposed by Defendants, [DE-53], a motion for leave to file a surreply in response to the motion to dismiss, [DE-91], and motions for default against Hans and Hill, [DE-92, -93].

## II.    Standard of Review

A court must dismiss all or part of an action over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Whether subject matter jurisdiction exists is a threshold question that must be addressed before considering the merits of the case. *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999); *see also* Fed. R. Civ. P. 12(h)(3) ("if the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The plaintiff, as the party opposing a Rule 12(b)(1) motion to dismiss, has the burden of proving that subject matter jurisdiction does, in fact, exist. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (citations omitted).

---

[1] The individual defendants are Randy Ramsay, Wendy Floyd Murphy, Pearl Burris-Floyd, Lee Barnes, Kelly Hunt Blue, Kirk J. Bradley, C. Phillip Byers, Jimmy D. Clark, Carolyn Coward, Joel Ford, John Fraley, Reginald Holley, Mark Holton, Terry Hutchins, J. Alex Mitchell, Sonya Phillips Nichols, Art Pope, Lee H. Roberts, Temple Sloan, Woody White, and Michael Williford.

Pursuant to Rule 12(b)(2), a court must dismiss a party over which it lacks personal jurisdiction, and the party asserting personal jurisdiction has the burden of proving jurisdiction by a preponderance of the evidence. *Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). Where, as here, a court addresses the question of jurisdiction based only on the allegations in the complaint and the motions and supporting memoranda, without an evidentiary hearing, the burden is on the plaintiff to make a *prima facie* showing of jurisdiction. *Id.* In determining whether the plaintiff has proven a *prima facie* case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Id.*

A motion under Rule 12(b)(4) challenges the sufficiency of process, while a Rule 12(b)(5) motion challenges the sufficiency of service of process. Fed. R. Civ. P. 12(b)(4), (5). "When the process gives the defendant actual notice of the pendency of the action, the rules . . . are entitled to a liberal construction" and "every technical violation of the rule or failure of strict compliance may not invalidate the service of process." *Henderson v. Rosen*, No. 5:13-CV-635-FL, 2013 WL 6097534, at \*3 (E.D.N.C. Nov. 20, 2013) (quoting *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984)), *aff'd sub nom. Henderson v. Town of Hope Mills*, 594 F. App'x 195 (4th Cir. 2015). "Nevertheless, 'the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored.'" *Id.* (quoting *Armco*, 733 F.2d at 1089). "The plaintiff bears the burden of establishing that process has been properly served." *Id.* (citing *McDaniel v. Greyhound Lines, Inc.*, No. 3:08-CV-130-FDW, 2008 WL 2704774, at \*4 (W.D.N.C. July 7, 2008); *Plant Genetic Sys., N.V. v. Ciba Seeds*, 933 F. Supp. 519, 526 (M.D.N.C. 1996)). "Inasmuch as the sufficiency of process and service of process concern the court's jurisdiction, consideration of materials outside the pleadings, such as affidavits,

6

is appropriate." *Davis v. Matroo*, No. 5:13-CV-00233-BO, 2013 WL 5309662, at \*2 (E.D.N.C. Sept. 19, 2013) (citing *Dimet Proprietary, Ltd. v. Indus. Metal Protectives*, 109 F. Supp. 472, 475 (D. Del. 1952)).

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotation omitted); *see Twombly*, 550 U.S. at 570; *Giarratano*, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." *Massey v. Ojaniit*, 759 F.3d 343, 352 (4th Cir. 2014). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302; *see Iqbal*, 556 U.S. at 678–79. Rather, a plaintiff's allegations must "nudge[] [his] claims," *Twombly*, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility," *Iqbal*, 556 U.S. at 678–79.

Finally, pleadings drafted by a *pro se* litigant are held to a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court is charged with liberally construing a pleading filed by a *pro se* litigant to allow for the development of a potentially meritorious claim. *See id.*; *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Noble v. Barnett*, 24 F.3d 582, 587 n.6 (4th Cir. 1994). However, the principles requiring generous construction of *pro se* complaints are not without limits, and the district courts are not required "to

conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.  Discussion

Defendants contend that (1) the individual members of the Board that were added in the amended complaint should be dismissed for insufficient process, insufficient service of process, lack of personal jurisdiction, and failure to state a claim; (2) Count I (§ 1983 Free Speech claim) should be dismissed based on Eleventh Amendment and qualified immunities and for failure to state a claim; (3) Counts II–IV (state law claims for wrongful retaliatory termination and tortious interference) should be dismissed based on Eleventh Amendment, sovereign, and public official immunities and for failure to state a claim; (4) Counts V, VI, VIII, and IX (right to refuse medically unnecessary care, 21 U.S.C. § 360bbb-3, N.C. Gen. Stat. § 116-11, and N.C. Gen. Stat. § 130A-152 claims) should be dismissed because they are barred by applicable immunities, lack a private cause of action, and/or fail to state a claim; and (5) Count VII (the ADA claim) should be dismissed as untimely and for failure to state a claim.  Defs.' Mem. [DE-51] at 10–37;[2] Defs.' Reply [DE-86].

Zow agreed to dismiss the newly added Defendants, [DE-53], and to dismiss Count I as to NCCU, Pl.'s Mem. [DE-82] at 10, but otherwise contends the motion to dismiss should be denied because defense counsel did not properly enter an appearance on behalf of Hans or Hill, the complaint sufficiently alleges wrongdoing against the Board members in their official capacities, the complaint contains sufficient allegations to state a claim on all counts, and the asserted immunities are inapplicable.  Pl.'s Mem. [DE-82] at 8–33; Pl.'s Surreply [DE-91-1].

---

[2] The page number referenced is from the CM/ECF footer whereas here it differs from the document's internal page number.

**A. Plaintiff's Motion to Drop Defendants and Motion for Leave to File Surreply**

Zow seeks to drop the 21 individual members of the Board added in the amended complaint. [DE-53]. Zow contends that no parties will be prejudiced because they were served in their official capacities as the UNC Board of Governors. *Id.* at 4. Defendants consent to the motion and agree that the UNC Board of Governors has not contested service and that any official capacity claim against the individual board members would be duplicative of any claim against the Board. Defs.' Resp. [DE-62] at 2. Defendants object to any representation by Zow that the individual board members were properly served with a summons and original or amended complaint. *Id.*

Under Fed. R. Civ. P. 21, "On motion or on its own, the court may at any time, on just terms, add or drop a party." Zow concedes that his "attempted service of the individuals added by name as UNC Board of Governors members, in their official capacity, did not satisfy Rule [5(b)(1)], Fed. R. Civ. P. service upon the attorney representing the Defendant UNC Board of Governors." Pl.'s Mot. [DE-53] at 4. Rather than attempt to cure the service defect, Zow seeks to dismiss the individual board members given Zow's official capacity claim against the Board. The court finds good cause to allow the motion, and Defendants Randy Ramsay, Wendy Floyd Murphy, Pearl Burris-Floyd, Lee Barnes, Kelly Hunt Blue, Kirk J. Bradley, C. Phillip Byers, Jimmy D. Clark, Carolyn Coward, Joel Ford, John Fraley, Reginald Holley, Mark Holton, Terry Hutchins, J. Alex Mitchell, Sonya Phillips Nichols, Art Pope, Lee H. Roberts, Temple Sloan, Woody White, and Michael Williford are dismissed.

Zow also moves to file a surreply to Defendants' motion to dismiss. [DE-91]. The court in its discretion will allow the motion and consider the surreply.

9

## B. The Individual Board Members

Defendants contend that Zow did not serve the individual board members and alleges no wrongdoing against them. Defs.' Resp. [DE-51] at 11, 13. Because Zow has voluntarily dropped these Defendants from the amended complaint, the motion to dismiss as to the individual board members is moot.

## C. Hans and Hill – Individual Capacity Claims

Defendants contend that Zow asserted new individual capacity claims against Hans and Hill in the amended complaint but failed to serve them with a summons. Defs.' Mem. [DE-51] at 12. Zow argues that the motion to dismiss does not apply to Hans and Hill because (1) defense counsel did not file the requisite Financial Disclosure Statement or enter a proper notice of appearance on behalf of Hans and Hill in their individual capacities, and (2) there is no evidence that Hans or Hill requested representation in their individual capacities from the N.C. Attorney General as required by N.C. Gen. Stat. § 143-300.3. Pl.'s Mem. [DE-82] at 8–9.

Defense counsel subsequently filed a supplemental notice of appearance to confirm that she was representing Hans and Hill in both their official and individual capacities in this action. [DE-94]. Furthermore, the financial disclosures filed by Hans and Hill are sufficient, and there is nothing in Fed. R. Civ. P. 7.1 or Local Civ. R. 7.3 that would require a second financial disclosure form to be filed simply because individual capacity claims were added against these defendants. Finally, the court in its discretion should decline to second guess the N.C. Attorney General's decision to provide a defense for Hans and Hill. *See* N.C. Gen Stat. § 143.300.3 ("Except as otherwise provided in G.S. 143-300.4, upon request of an employee or former employee, the State may provide for the defense of any civil or criminal action or proceeding brought against him in his official or individual capacity, or both, on account of an act done or omission made in the scope

and course of his employment as a State employee."); *Yang v. Lai*, No. 1:22CV5, 2022 WL 2440834, at *2 (M.D.N.C. July 5, 2022) (declining to "usurp the North Carolina Attorney General's decision to represent Defendants in this case[.]"). And Zow has cited no authority for the proposition that Hans or Hill were required to make a request for representation in their individual capacities after the amended complaint was filed. Accordingly, the court should consider the motion to dismiss Hans and Hill on the merits.

Turning to Defendants' argument that Hans and Hill were not properly served with a summons, after Defendants' motion was filed Zow filed a Notice of Proof of Service for both Hans and Hill, [DE-56, -60]. The notices indicate service was made by "V. Zow" through certified mail at Hans's and Hill's places of business. [DE-56-1] at 2–3; [DE-60-1, -60-2]. A summons may be served by any person who is at least 18 years old and is not a party by, among other thing, following state law for serving a summons. Fed. R. Civ. P. 4(c)(2), (e)(1); *see Thomas v. Green Point Mortg. Funding*, No. 5:10-CV-365-D, 2011 WL 2457835, at *1 (E.D.N.C. June 16, 2011) ("Rule 4(e)(1) adopts the service requirements of state law 'where the district court is located or where service is made.'"). Under North Carolina state law, service of process may be made by "mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the party to be served, and delivering to the addressee." N.C. R. Civ. P. 4(j)(1)(c). "A plaintiff is not required to mail the summons and complaint to a defendant's residence; sending the suit papers to a defendant's place of employment is within the rule." *Davis v. Maxfield*, No. 5:21-CT-3234-M, 2023 WL 6368319, at *1 (E.D.N.C. Sept. 28, 2023)(quoting *Moore v. Cox*, 341 F. Supp. 2d 570, 573 (M.D.N.C. 2004)). Although Hans and Hill did not sign the return receipt themselves, they have not challenged the proofs of service filed by Zow. Accordingly, the current record reflects that Hans and Hill were served in their individual capacities.

**D. Immunity Defenses**

Defendants contend the Eleventh Amendment bars most claims against the Board and NCCU; sovereign immunity bars the state law and statutory claims, those immunities also bar the official capacity claims, and public official immunity bars the state law claims for compensatory damages against Akinleye and Hill. Defs.' Mem. [DE-51] at 13. Zow concedes that the Count I claim for free speech retaliation and wrongful termination in violation of 42 U.S.C. § 1983 against NCCU should be dismissed but otherwise argues that the asserted immunities do not apply. Pl.'s Mem. [DE-82] at 10–14.

### 1. The Board and NCCU

Defendants contend the Board and NCCU are immune from the § 1983 claim (Count I), the state-law claims (Counts II–IV, VIII, and IX), and the EUA claim (Count VI). Defs.' Mem. [DE-51] at 14–16.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI.; *see Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."). Eleventh Amendment immunity "extends beyond the literal text of the Eleventh Amendment to prevent a state from being sued by one of its own citizens without its consent." *McCarter v. Univ. of N.C. at Chapel Hill*, No. 1:20-CV-1050, 2021 WL 4482983, at *15 (M.D.N.C. Sept. 30, 2021) (quoting *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 329 (4th Cir. 2001)). "Under the Eleventh Amendment, . . . neither a State nor its officials in their official capacity may be sued for damages in federal court without their consent." *Gamache v. Cavanaugh*, 82 F.3d 410, 1996 WL 174623,

at *1 (4th Cir. 1996); *see also Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995). Such immunity "extends as well to state agencies and other government entities properly characterized as 'arms[s] of the State.'" *Gray*, 51 F.3d at 430 (first quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); and then citing *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)).

"Numerous courts have decided whether public state universities are 'arms of the state.' Almost universally, the answer has been in the affirmative." *Hoelzer v. Bd. of Governors of the Univ. of N.C.*, No. 1:20-CV-1072, 2022 WL 973069, at *4 (M.D.N.C. Mar. 31, 2022) (first quoting *Md. Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 262 (4th Cir. 2005); and then citing *Huang v. Bd. of Govs. of Univ. of N.C.*, 902 F.2d 1134, 1138 (4th Cir. 1990) (finding that N.C. State University was an arm of the state and, therefore, entitled to Eleventh Amendment immunity)). Courts have likewise found that the UNC Board of Governors is entitled to Eleventh Amendment immunity. *Id.* (citing *Huang*, 902 F.2d at 1138). However, there are three exceptions to the bar against suing states: "when an individual sues 'for prospective injunctive relief against state officials acting in violation of federal law,'" when Congress unequivocally abrogates Eleventh Amendment immunity, or when a state waives its immunity. *Budayr v. Michigan*, No. 5:17-CV-327-FL, 2017 WL 6061972, at *3 (E.D.N.C. Dec. 7, 2017) (quoting *Lee-Thomas v. Prince George's Cnty. Pub. Schs.*, 666 F.3d 244, 248–49 (4th Cir. 2012)). Accordingly, the Board and NCCU are entitled to Eleventh Amendment immunity absent an applicable exception.

### i.   Count I - § 1983 First Amendment Retaliation and Wrongful Termination Claim

Count I is asserted against NCCU, Akinleye, and Hill. As an initial matter, Zow concedes that the Count I claim against NCCU should be dismissed as NCCU is not a "person" for purposes of § 1983. Pl.'s Resp. [DE-82] at 10; *see Raiford v. N.C. Cent., Univ.*, No. 1:12-CV-548, 2012

13

WL 12883770, at *3 (M.D.N.C. Dec. 20, 2012) ("NCCU is not a "person" who can be sued under 42 U.S.C. § 1983). Zow alleges in the caption of the amended complaint that Akinleye and Hill are defendants in their official and individual capacities, but the body of the amended complaint does not specify as to each claim in what capacity these defendants are sued. To the extent these are official capacity claims against Akinleye and Hill, they are claims against NCCU as Akinleye's and Hill's employer. *See Keith-Foust v. N.C. Cent. Univ.*, No. 1:15-CV-470, 2016 WL 4256952, at *13 (M.D.N.C. Aug. 11, 2016) ("NCCU qualifies as a state institution"; thus, "NCCU and its officials generally enjoy the protection of the Eleventh Amendment immunity from liabilities that must be paid from public funds.") (quoting *Hooper v. North Carolina*, 379 F. Supp. 2d 804, 812 (M.D.N.C. 2005) (citing N.C. Gen. Stat. §§ 150B-2(1a), 116-4)). Zow argues that the § 1983 First Amendment retaliation claim against Akinleye and Hill in their official capacities is not barred by Eleventh Amendment immunity based on *Ex parte Young* because Zow is seeking a declaratory judgment to stop ongoing violations of federal law and because he seeks reinstatement of his employment. Pl.'s Mem. [DE-82] at 10–13.

State officials do not enjoy Eleventh Amendment immunity if a plaintiff requests prospective relief for a continuing violation of federal law. *Ex parte Young*, 209 U.S. 123, 155–56 (1908); *Green v. Mansour*, 474 U.S. 64, 68 (1985). In that scenario, the Supremacy Clause abrogates Eleventh Amendment immunity. *See Green*, 474 U.S. at 68 ("Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment."); *Westminister Nursing Ctr. v. Cohen*, No. 5:17-CV-96-FL, 2017 WL 5632661, at *5 (E.D.N.C. Nov. 22, 2017) ("State agencies can be sued for prospective injunctive relief to comply with the federal Constitution and federal statutes."). Thus,

14

under *Ex parte Young*, "federal courts may exercise jurisdiction over claims against state officials by persons at risk of or suffering from violations by those officials of federally protected rights, if (1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective." *Hall v. Liles*, No. 5:23-CV-220-BO-BM, 2023 WL 8810773, at \*4 (E.D.N.C. Dec. 20, 2023) (quoting *Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998)).

In Zow's complaint under claims for relief Count I he requests "relief and damages against Defendants NCCU, Chancellor Akinleye[,] and Hill as set forth in his Prayer for Relief." Compl. [DE-23] ¶ 224. Zow's § 1983 official capacity claim for damages is barred by the Eleventh Amendment. *See Keith-Foust*, 2016 WL 4256952, at \*13 (discussing NCCU and its official's immunity from liability that would be payable from the public funds). In the prayer for relief at the end of the complaint, Zow also requests (1) a declaratory judgment that (a) Hans's August 5, 2021 Memo and NCCU's August 9, 2021 Memo regarding the "Get Vaccinated o[r] Get Tested Regularly" policy, as well as Hill's August 5, 2021 Travel Memo, are illegal under the EUA federal statute and North Carolina state law, and (b) by retaliating, threatening, and terminating Zow's employment, NCCU violated his state and federal constitutional rights, the ADA, and his federal statutory rights under the EUA; and (2) "[f]ull reinstatement of fringe benefits and seniority and vesting rights pursuant to N.C. law[.]" *Id.* at 86–88.

The declaratory relief Zow seeks does not address an ongoing violation and is not prospective but rather addresses past conduct. As the court explained in *Hall v. Liles*,

> Where the effect of a declaratory judgment and injunction would be to "undo accomplished state action[,]" the *Ex Parte Young* exception does not apply. *Paraguay*, 134 F.3d at 628. Moreover, "even though the consequences of any past violation may persist, invoking those effects does not transform past state action into an ongoing violation." *Jemsek v. Rhyne*, 662 F. App'x 206, 211 (4th Cir. 2016).

2023 WL 8810773, at *4. Because Zow seeks declarations that past actions were illegal and violated his rights and he alleges no presently ongoing violations, he does not seek prospective relief. *See Emanuelson v. Univ. of N.C. at Greensboro*, No. 1:17-CV-534, 2018 WL 1779342, at *5 (M.D.N.C. Apr. 12, 2018) (prayer for declaratory judgment that defendant violated plaintiff's constitutional rights constituted retrospective relief to which *Ex parte Young* did not apply), *adopted by* 2018 WL 11421422 (M.D.N.C. July 24, 2018); *Al-Deen v. Trustees of Univ. of N.C., Wilmington*, 102 F. Supp. 3d 758, 765 (E.D.N.C. 2015) (finding *Ex parte Young* did not apply where the plaintiff sought declarations related to only past conduct). However, Zow's request for reinstatement of his benefits is prospective in nature. *See D.T.M. ex rel. McCartney v. Cansler*, 382 F. App'x 334, 337 (4th Cir. 2010) (finding "request for prospective reinstatement of benefits is precisely the type of relief that we recognized in *Kimble v. Solomon*, 599 F.2d 599, 605 (4th Cir. 1979), that plaintiffs may seek consistent with the Eleventh Amendment[.]"). While Defendants correctly argue that Zow did not seek reinstatement of his employment, the request for reinstatement of benefits appears sufficient for the claim to survive the Eleventh Amendment immunity bar. However, as will be discussed below, Zow has failed to state a First Amendment retaliation claim and, thus, this claim is subject to dismissal. *See Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 646 (2002) ("[T]he inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim.").

### ii. Counts II–IV, VIII and IX - The State Law Claims

Zow asserts claims against NCCU for wrongful discharge in violation of the North Carolina Constitution Article I § 1 (Count II), wrongful retaliatory termination in violation of the Equal Protection Clause of the North Carolina Constitution Article I § 19 (Count III), and tortious interference with economic relations (Count IV). Am. Compl. [DE-23] ¶¶ 225–263. He also

16

asserts claims against the Board for violation of N.C. Gen. Stat. § 116-11 (Count VIII) and against the Board and NCCU for violation of N.C. Gen. Stat. § 130A-152 (Count IX). Am. Compl. [DE-23] ¶¶ 305–325. As explained above, the Board and NCCU are arms of the state entitled to Eleventh Amendment immunity absent an exception. *See Hoelzer*, 2022 WL 973069, at *4; *Budayr*, 2017 WL 6061972, at *3; *see also Holmes v. Univ. of N.C.*, No. 5:18-CV-150-D, 2019 WL 1968045, at *5 (E.D.N.C. May 2, 2019) ("[T]he Eleventh Amendment bars the adjudication of pendent state law claims against nonconsenting state defendants in federal court.") (citing *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 540–41 (2002); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120–21 (1984)). A state may waive its immunity or Congress may abrogate a state's Eleventh Amendment rights, *Walton v. N.C. Dep't of Com.*, No. 1:17-CV-00054-MR-DLH, 2018 WL 1368364, at *4 (W.D.N.C. Mar. 16, 2018), *aff'd sub nom. Walton v. N.C. Dep't of Com.*, 732 F. App'x 239 (4th Cir. 2018), but Zow has not asserted that either exception applies to his state law claims against the Board or NCCU. Accordingly, the state law claims asserted in Counts II–IV, VIII and IX against the Board and NCCU are barred by Eleventh Amendment immunity and should be dismissed.

Each of the state law claims is also asserted against an individual defendant—Counts II and IV against Akinleye, Count III against Akinleye and Hill, Count VIII against Hans and Akinleye, and Count IX against Hans. Am. Compl. [DE-23] ¶¶ 225–63, 305–25. The amended complaint does not indicate whether these claims are brought against these individuals in their official or individual capacities.[3] To the extent these are official capacity claims, as explained above, they are claims against NCCU as Akinleye's and Hill's employer and the Board as Hans's

---

[3] Because North Carolina does not recognize direct claims under the North Carolina Constitution against public officials acting in their individual capacities, *see Bigelow v. Town of Chapel Hill*, 227 N.C. App. 1, 16, 745 S.E.2d 316, 327 (2013) (citing *Corum v. Univ. of N.C.*, 330 N.C. 761, 789, 413 S.E.2d 276, 293 (1992)), Counts II and III are construed as official capacity claims.

employer for which Defendants have claimed Eleventh Amendment immunity. Defs.' Mem. [DE-51] at 16–17. Zow argues that his Count II and III[4] official capacity claims can proceed under *Corum*. Pl.'s Mem. [DE-82] at 17–18, 21–22. Zow does not argue against dismissal of the Count IV, VIII, and IX official capacity claims, and they should be dismissed as redundant of the claims asserted against NCCU and the Board. *See Mangum v. Town of Wrightsville Beach*, No. 7:19-CV-29, 2019 WL 2246780, at *2 (E.D.N.C. May 23, 2019) (granting a motion to dismiss where plaintiffs failed to dispute that the official capacity claims were duplicative with the government entity claims).

In *Corum*, the North Carolina Supreme Court recognized that "in the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution." 330 N.C. at 782, 413 S.E.2d at 289. Therefore, "[t]o assert a direct constitutional claim . . . for violation of his [state constitutional rights], a plaintiff must allege that no adequate state remedy exists to provide relief for the injury." *Copper ex rel. Copper v. Denlinger*, 363 N.C. 784, 788, 688 S.E.2d 426, 428 (2010) (citing *Corum*, 330 N.C. at 782, 413 S.E.2d at 289)). In Counts II and III, Zow alleges he was wrongfully terminated in violation of Article I, section 1 (the right to enjoy the fruits of one's labor) and section 19 (the right to equal protection under the law). Zow did not allege in the amended complaint, with respect to his state constitutional claims in Counts II and III, that no adequate state remedy exists to provide relief for his alleged injury. Am. Compl. [DE-23] ¶¶ 225–49. Furthermore, "[a]n adequate state law remedy will exist where there is a cause of action, existing at common law or created by statute, that provides plaintiff with 'the possibility of relief' for the same injury alleged in the direct constitutional claim." *Miller v. N.C. State Univ.*, No. 5:18-CV-523-FL, 2019 WL 3686592, at *5

---

[4] In discussing the applicability of *Corum*, Zow references his Equal Protection claim as Count IV when in fact it is Count III. Pl.'s Mem. [DE-82] at 18; Am. Compl. [DE-23] at 67.

18

(E.D.N.C. Aug. 6, 2019) (quoting *Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ.*, 363

N.C. 334, 340 (2009)). As explained in *Haynes v. City of Durham, N.C.*,

> [A] state-law remedy is not inadequate simply because the plaintiff must assert his claim against a public official in his individual capacity, rather than against the State. *See Rousselo v. Starling,* 128 N.C. App. 439, 448, 495 S.E.2d 725, 731 (1998) (holding that claims against a highway patrolman in his individual capacity provided adequate state-law remedies to preclude direct constitutional claims because *"Corum* did not hold that there had to be a remedy against the State of North Carolina in order to foreclose a direct constitutional claim."); *Phillips v. Gray,* 163 N.C. App. 52, 57–58, 592 S.E.2d 229, 233 (2004) (affirming summary judgment on a plaintiff's state constitutional claim where the plaintiff also had a common law wrongful discharge claim against a sheriff in his individual capacity); *Johnson v. Causey,* No. COA09–1712, 701 S.E.2d 404, 2010 WL 4288511, at *10 (N.C. Ct. App. Nov. 2, 2010) (unpublished table opinion) (holding that claims against a deputy sheriff in his individual capacity provided an adequate state-law remedy to preclude a constitutional claim against a sheriff in his official capacity). This is true even if the plaintiff's burden of proof on his state-law claim may be different, or if the claim may be subject to additional affirmative defenses, like public official immunity. *See Debaun v. Duszaj,* — N.C. App. —, 767 S.E.2d 353, 357 (2014) ("[T]he fact that plaintiff must overcome the affirmative defense of public officer immunity to succeed on his tort claims does not negate their adequacy as a remedy."); *Rousselo,* 128 N.C. App. at 448–49, 495 S.E.2d at 731–32 (concluding that a common law trespass to chattels claim was not inadequate "merely because [it] might require more of" the plaintiff than a constitutional claim for unlawful search). Finally, a state-law remedy is not inadequate simply because a plaintiff failed to comply with a procedural hurdle, such as a statute of limitations. *See Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ.,* 363 N.C. 334, 340, 678 S.E.2d 351, 355–56 (2009); *Wilkins v. Good,* No. Civ 4:98-CV-233, 1999 WL 3320960, at *8 (W.D.N.C. Jul. 29, 1999).

No. 1:12-CV-1090, 2016 WL 469608, at *7 (M.D.N.C. Feb. 5, 2016) (internal footnote omitted).

Zow asserts a state law tort claim for wrongful termination in violation of tortious

interference with economic relations against both NCCU and Akinleye, which provides an

adequate remedy at state law for his alleged injury, i.e., termination. Am. Compl. [DE-23] ¶¶ 250–

63; *see Watson v. Town of Mint Hill*, No. 3:20-CV-00721-FDW-DCK, 2021 WL 2827297, at *3

(W.D.N.C. July 7, 2021) ("Of notable importance to Plaintiff's claim, a plaintiff is not entitled to

a direct constitutional claim when his or her rights are adequately protected by a wrongful

19

discharge claim.") (citing *Phillips v. Gray*, 592 S.E.2d 229, 233 (N.C. 2004) (holding the lower court properly dismissed the former deputy's free speech claim because his rights were "adequately protected by a wrongful discharge claim")). Accordingly, the Count II and III official capacity claims should be dismissed.

### iii. Count VI - The EUA Claim

Zow asserts a claim against all Defendants for violation of the emergency use authorization provisions of 21 U.S.C. § 360bbb-3. Am. Compl. [DE-23] ¶¶ 274–92. Defendants contend that the statute does not abrogate the state's immunity, Defs.' Mem. [DE-51] at 15, and Zow does not contest this assertion. Furthermore, although Zow seeks declaratory rather than monetary relief on this claim, Am. Compl. [DE-23] ¶ 292, because the relief sought does not address an ongoing violation and is not prospective but rather addresses past conduct, it would not fall under the *Ex parte Young* exception. *See supra* § D.1.i. Finally, as will be discussed below, even if the relief sought was prospective, there is no private right of action under this statute. Accordingly, the Count VI claim against the Board, NCCU, and the official capacity defendants should be dismissed.

### 2. Public Official Immunity - Akinleye and Hill (Counts II–IV)

Defendants contend that Akinleye and Hill are entitled to public official immunity for the state law claims asserted against them in their individual capacities (Counts II and IV against Akinleye and Count III against Akinleye and Hill). Defs.' Mem. [DE-51] at 17–19. Zow argues that Hill is not entitled to public official immunity because he is not a public official, and that neither Akinleye nor Hill are entitled to public official immunity because their conduct was malicious. Pl.'s Mem. [DE-82] at 13 , 20–21.

"Public official immunity 'insulates a public official from personal liability for *mere negligence* in the performance of his duties unless his alleged action[s] were malicious or corrupt or fell outside and beyond the scope of his duties.'" *Matemu v. Brienzi*, No. 5:19-CV-00380-M, 2021 WL 9000113, at *8 (E.D.N.C. Apr. 6, 2021) (quoting *McCullers v. Lewis*, 265 N.C. App. 216, 221, 828 S.E.2d 524, 531 (2019)). As explained above, North Carolina does not recognize direct claims under the North Carolina Constitution against public officials acting in their individual capacities. *See Bigelow*, 227 N.C. App. at 16, 745 S.E.2d at 327 (citing *Corum*, 330 N.C. at 789, 413 S.E.2d at 293). Because Zow cannot assert individual capacity constitutional claims against Akinleye and Hill, Defendants' public official immunity argument as to Counts II and III is moot.

As for Count IV, the claim of tortious interference with economic relations is an intentional tort under North Carolina law, to which public official immunity does not apply. *See Blue Ridge Pub. Safety, Inc. v. Ashe*, 712 F. Supp. 2d 440, 447 (W.D.N.C. 2010) ("[W]here 'the plaintiff alleges an intentional tort claim, a determination [of governmental immunity] is unnecessary since, in such cases, neither a public official nor a public employee is immunized from suit in his individual capacity.'") (quoting *Beck v. City of Durham*, 154 N.C. App. 221, 230, 573 S.E.2d 183, 190 (2002) (tortious interference with contract and prospective economic advantage are intentional torts)). Accordingly, public official immunity provides no grounds for dismissal as to Count IV against Akinleye in his individual capacity.

### E. Failure to State a Claim

#### 1. Count I - § 1983 First Amendment Retaliation and Wrongful Termination Claim

In addition to arguing that Count I is barred by the relevant immunities discussed above, Defendants also contend that Zow has failed to state a claim for First Amendment retaliation.

21

Defs.' Mem. [DE-51] at 19–25. Defendants argue that Zow did not engage in any protected First Amendment activity, there is no causal relationship, and the individual capacity claims are barred by qualified immunity. *Id.* Zow contends that his speech was protected under the First Amendment, he sufficiently alleged adverse actions and causation, and Defendants are not entitled to qualified immunity. Pl.'s Mem. [DE-82] at 13–16.

In considering whether a plaintiff has stated a plausible claim for First Amendment retaliation, the court must determine,

> (1) whether the public employee was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest; (2) whether the employee's interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public; and (3) whether the employee's speech was a substantial factor in the employee's [adverse employment action].

*Porter v. Bd. of Trustees of N.C. State Univ.*, No. 5:21-CV-365-BO, 2022 WL 2195011, at \*6 (E.D.N.C. June 17, 2022) (quoting *McVey v. Stacy*, 157 F.3d 271, 277–78 (4th Cir. 1998)), *aff'd*, 72 F.4th 573 (4th Cir. 2023), *cert. denied sub nom. Porter v. Bd. of Trustees of NC*, No. 23-363, 2024 WL 218781 (U.S. Jan. 22, 2024). To be protected, the public employee's speech must be on a matter of public concern, i.e., involve an issue of social, political, or other interest to the community. *See James v. City of Monroe*, No. 3:22-CV-00178-RJC-DSC, 2022 WL 3268744, at \*6 (W.D.N.C. Aug. 10, 2022) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964); *Love-Lane v. Martin*, 355 F.3d 766, 776 (4th Cir. 2004)). "Whether speech fairly relates to a public concern or expresses a private grievance or a matter of immediate self-interest must be determined by the content, the form, and the context of the speech" and this determination is an issue of law. *See Stroman v. Colleton Cnty. Sch. Dist.*, 981 F.2d 152, 156 (4th Cir. 1992) (citing *Connick v. Myers*, 461 U.S. 138, 147–48 & n.7 (1983)).

Zow alleges that his speech in opposition to the proposed Covid-19 vaccine mandate at the April 19, 2021 COCC meeting and his email to Akinleye the following day questioning the lawfulness of the proposed mandate were protected speech on an issue of public concern. Am. Compl. [DE-23] ¶¶ 210, 214. Zow further alleges that while his verbal speech was made while an employee at work it was expressed as a private citizen; Defendants NCCU, Akinleye, and Hill took ten adverse actions against him as a result of his protected speech; and his protected speech was the but-for cause of his termination. *Id.* ¶¶ 217, 220, 222.

In *Garcetti v. Ceballos*, the Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. 410, 421 (2006). The content, form, and context of Zow's speech demonstrate it was made pursuant to his official duties and, thus, unprotected by the First Amendment. Zow's April 19, 2021 speech was made at the COCC meeting where a proposed mandatory Covid-19 vaccination policy was being discussed. Am. Compl. [DE-23] ¶¶ 7–9. Zow, as a member of the COCC, Am. Compl., Ex. 2 [DE-23-2], expressed his opposition to the vaccine mandate proposal and voted against it, *id.* [DE-23] ¶¶ 7–9. Zow further alleges that his April 20, 2021 email to Akinleye warning that the proposed mandate would violate UNC policy, as well as state and federal law, was a "professional obligation as Chief of Staff." *Id.* ¶ 124. Considering the context in which the speech was made, both at the COCC meeting and in response to a related email the following day, and Zow's role as Chief of Staff and a member of the COCC, Zow has not plausibly alleged that he was speaking as a citizen for First Amendment purposes, and his speech is not protected by the First Amendment. Accordingly, the First Amendment retaliation claim should be dismissed.

Alternatively, Defendants argue that even if Zow's speech was protected, he has not plausibly alleged that it was the but-for cause of an adverse employment action. The parties agree that Zow's termination constitutes an adverse employment action. *See Porter*, 2022 WL 2195011, at *6 ("Termination, demotion, loss of compensation, and loss of opportunity for promotion are well-settled materially adverse employment actions.") (citing *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 316 (4th Cir. 2006), *Boone v. Goldwin*, 178 F.3d 253, 256–57 (4th Cir. 1999)). However, Defendants contend that the lack of temporal proximity between Zow's speech in April 2021 and his termination in October 2021 negates the requisite causal connection. Defs.' Mem. [DE-51] at 20. Zow contends that his protected speech was the but-for cause of his termination and also that he alleged nine other adverse employment actions for which there is sufficient causation. Pl.'s Mem. [DE-82] at 16.

Zow alleged at that on June 14, 2021, Akinleye removed Zow's supervisory authority over three of the four employees that directly reported to Zow, which was retaliatory and in effect and a demotion of duties to negatively impact his effectiveness as Chief of Staff. Am. Compl. [DE-23] ¶¶ 133–34. The Fourth Circuit has recognized the "loss of job title or supervisory responsibility" as one of the typical requirements for showing an adverse employment action. *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999). The temporal proximity of Zow's loss of supervisory authority was much closer to his speech, less than two months, than was his termination. *See Vicino v. Maryland*, 982 F. Supp. 2d 601, 614 (D. Md. 2013) (finding plaintiff's termination less than two months after engaging in a protected activity with her employer was sufficiently close to support the presence of causation). Accordingly, if the court disagrees with the M&R's conclusion that Zow's speech was not protected, then it should find that Zow has

plausibly alleged an adverse employment action and causation with respect to the loss of supervisory authority.

Finally, Defendants argue that the individual capacity claims against Akinleye and Hill are barred by qualified immunity. Defs.' Mem. [DE-51] at 21. Zow contends his clearly established rights were violated, and Akinleye and Hill are not entitled to qualified immunity. Pl.'s Mem. [DE-82] at 14. "Generally, qualified immunity operates to protect law enforcement and other government officials from civil damages liability for alleged constitutional violations stemming from their discretionary functions." *Raub v. Campbell*, 785 F.3d 876, 880–81 (4th Cir. 2015) (citation omitted). "The protection extends to all but the plainly incompetent or those who knowingly violate the law." *Id.* at 881 (citation and internal quotation marks omitted). The Fourth Circuit has "emphasized repeatedly, '[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.'" *Id.* (citations omitted). The qualified immunity analysis considers "(1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Id.* (citations omitted). However, the court need not address both inquiries and can take them in "the order . . . that will best facilitate the fair and efficient disposition of each case." *Id.* (citation omitted).

Should the court find, consistent with the M&R, that Zow's speech was not protected by the First Amendment, then Zow fails on the first prong, and Akinleye and Hill are entitled to qualified immunity. However, if the court concludes the speech was protected, then, as discussed above, Zow has plausibly alleged a First Amendment retaliation claim, and the analysis proceeds to whether the right was clearly established.

> "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and alteration omitted). In determining whether a right is clearly established, the Court first

considers controlling authority in the jurisdiction, i.e. the decisions of the United States Supreme Court, the Fourth Circuit Court of Appeals, and the North Carolina Supreme Court. *See Booker*, 855 F.3d at 538. Where there is no controlling authority, the Court may consider persuasive authority from other jurisdictions. *Id.* at 539. "It is important to emphasize that [a qualified immunity] inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (internal quotation marks omitted) (quoting *Saucier v. King*, 533 U.S. 194, 201 (2001)).

*Tyler v. Poole*, No. 1:17-CV-1142, 2020 WL 758116, at \*3 (M.D.N.C. Feb. 14, 2020), *adopted by* 2020 WL 1527923 (M.D.N.C. Mar. 31, 2020).

The Fourth Circuit in *DiMeglio v. Haines* observed that "only infrequently will it be 'clearly established' that a public employee's speech on a matter of public concern is constitutionally protected, because the relevant inquiry requires a 'particularized balancing' that is subtle, difficult to apply, and not yet well-defined." 45 F.3d 790, 806 (4th Cir. 1995) (citing *Connick v. Myers*, 461 U.S. 138, 150 (1983)). The issue here—whether a public employee's speech against his employer's proposed Covid-19 vaccination policy was pursuant to official duty or as a private citizen—requires precisely the type of particularized balancing that precludes the law from being clearly established on the issue. *See Harter v. Vernon*, 953 F. Supp. 685, 698 (M.D.N.C. 1996) (finding that "whether something is speech on a matter of public concern is determined by its content, form, and context on the whole record" that is "often a complex inquiry that is not easily done by employers.") (citations omitted), *aff'd*, 101 F.3d 334 (4th Cir. 1996), and *on reconsideration*, 980 F. Supp. 162 (M.D.N.C. 1997). Neither party has pointed to any controlling authority on the issue, and the court has independently found none.

Although not controlling, the case of *Griffin v. Univ. of Maine Sys.*, No. 2:22-CV-00212-JDL, 2023 WL 5279660 (D. Me. Aug. 16, 2023) provides a helpful comparison. In *Griffin*, the court granted qualified immunity to the president of a university against a professor's First Amendment retaliation claim. *Id.* at \*11. The professor complained to her superiors about the

26

university's mandatory mask policy and was ultimately terminated. *Id.* at *2–3. The court found that it was not clearly established that a public university teacher had a constitutionally protected right to privately communicate her concerns about the University's COVID-19 policies to her superiors "in light of the fact-intensive inquiry required to determine whether a public employee's speech was made within the scope of their employment, or whether they spoke as a private citizen." *Id.* at 11. The court also found that "a reasonable University official in [the president's] position could have reasonably believed that he was not violating [the professor's] constitutional rights by terminating her employment." *Id.* at 12. Similarly here, it is not clearly established that Zow, as an NCCU employee and COCC committee member, had a constitutionally protected right to express opposition to the proposed vaccination policy at the COCC meeting and subsequently to the Chancellor. And it is far from sufficiently clear that a reasonable official would have understood that he was violating Zow's rights. *Reichle*, 566 U.S. at 664. Accordingly, Akinleye and Hill are entitled to qualified immunity in their individual capacities against Zow's First Amendment retaliation claim.

### 2. Count II - Wrongful Discharge in Violation of the North Carolina Constitution Article I § 1 Fruits of Labor Clause

In addition to arguing that Count II is barred by the relevant immunities discussed above, Defendants contend that Zow (1) has failed to state a wrongful termination claim[5] because he did not identify a state policy that his termination violated, and (2) has failed to state a fruits of labor claim because he has another adequate state law remedy and has not alleged that NCCU violated its own established rule. Defs.' Mem. [DE-51] at 25–28. Zow argues that NCCU's April 19, 2021 proposed mandatory vaccination policy violated state and federal law and policy, and that he may proceed on his constitutional claim under *Corum*. Pl.'s Mem. [DE-82] at 17–21.

---

[5] Defendants construe Count II to assert both a tort claim and a constitutional claim.

### i. Wrongful Termination Claim

To state a claim for wrongful termination under North Carolina state law, "a plaintiff must 'plead plausible facts that, if later proved, would show that dismissal occurred for a reason that violates public policy.'" *White v. Gannette Co.*, No. 1:17-CV-277, 2018 WL 3352978, at *3 (W.D.N.C. May 29, 2018) (quoting *Parker v. Curtiss-Wright Corp.*, No. 3:17-CV-00639-MOC-DCK, 2018 WL 1652098, at *7 (W.D.N.C. April 5, 2018) (citing *Imes v. City of Asheville*, 594 S.E. 2d 397 (N.C. Ct. App. 2004))), *adopted by* 2018 WL 3349713 (W.D.N.C. July 9, 2018).

Zow alleges that on April 19, 2021, NCCU had a policy of "'no' mandated COVID-19 'vaccines' per N.C.G.S. § 130A-152 (a)," and that he suffered multiple acts of retaliation for opposing the policy, ultimately resulting in his termination. Am. Compl. [DE-23] ¶¶ 235–38. N.C. Gen. Stat. § 130A-152(a) provides, in relevant part, that "every child present in this State shall be immunized against any other disease upon a determination by the Commission that the immunization is in the interest of the public health." Zow alleges that pursuant to this law, only the Commission on Public Health can mandate immunizations for students in North Carolina. Am. Compl. [DE-23] ¶ 16 (citing Hans's April 29, 2021 Memo relying on § 130A-152(a) to conclude that only the Commission can mandate vaccinations for college students in North Carolina). Thus, Zow reasons that NCCU's April 19, 2021 proposed mandatory vaccination policy violated the law and policy, and Zow suffered retaliatory termination for opposing the unlawful policy. *Id.* at ¶¶ 236–37; Pl.'s Mem. [DE-82] at 19–20.

Zow has cited no public policy contained in North Carolina common law or statute that would prevent his termination for opposing an unlawful proposed vaccination policy. The case of *Wilkes v. Argueta*, No. 1:16-CV-260, 2017 WL 1215749 (M.D.N.C. Mar. 31, 2017) is helpful to understand the flaw in Zow's claim. In *Wilkes*, the plaintiff's wrongful discharge claim was based

28

on retaliation for opposing the defendant employer's alleged sexual discrimination. *Id.* at \*9. The court reasoned that although North Carolina had a public policy against sexual discrimination and harassment, it did not have a public policy regarding retaliation for opposing such prohibited conduct. *Id.* Similarly here, Zow has cited a statute that he claims NCCU violated but has cited no public policy regarding retaliation for opposing NCCU's proposed unlawful policy. Accordingly, Zow has failed to state a wrongful termination claim.

## ii. Fruits of Labor Claim

The Fruits of Labor clause, North Carolina Constitution Article I § 1, "creates a right to conduct a lawful business or to earn a livelihood that is 'fundamental' for purposes of state constitutional analysis." *Howell v. Cooper*, 892 S.E.2d 445, 452 (N.C. Ct. App. 2023) (quoting *Treants Enters., Inc. v. Onslow County*, 83 N.C. App. 345, 354, 350 S.E.2d 365, 371 (1986)). "The thrust of the fruits of labor clause is that the state 'may not, under the guise of protecting the public interest, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations.'" *Id.* (quoting *Cheek v. Charlotte*, 273 N.C. 293, 296, 160 S.E.2d 18, 21 (1968)). It can also apply "when a governmental entity acts in an arbitrary and capricious manner toward one of its employees." *Id.* at 453 (quoting *Tully v. City of Wilmington*, 370 N.C. 527, 535–36, 810 S.E.2d 208, 215 (2018)).

As explained above, a plaintiff must allege the absence of an adequate state remedy in order to assert a direct claim under the North Carolina Constitution. *See Corum*, 330 N.C. at 782, 413 S.E.2d at 289. Zow has not alleged in the amended complaint with respect to his state constitutional claims that no adequate state remedy exists to provide relief for his alleged injury. Am. Compl. [DE-23] ¶¶ 225–40. And Zow has asserted a state law tort claim for wrongful termination in violation of tortious interference with economic relations against both NCCU and

Akinleye, which provides an adequate remedy at state law for his alleged injury, i.e., termination. Am. Compl. [DE-23] ¶¶ 250–63; *see Watson*, 2021 WL 2827297, at *3 (finding the plaintiff was not entitled to a direct constitutional claim where plaintiff's rights were adequately protected by a wrongful discharge claim). The Supreme Court of North Carolina has explained that "to be considered adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim." *Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 339–40, 678 S.E.2d 351, 355 (2009). Although claims barred by immunity are not adequate, *see Corum*, 330 N.C. at 785–86, 413 S.E.2d at 291–92, Zow's tort claim for wrongful termination or tortious interference, as discussed above, is not barred by immunity against Akinleye in his individual capacity. The *Craig* court added that its holding did not "predetermine the likelihood that plaintiff will win other pretrial motions, defeat affirmative defenses, or ultimately succeed on the merits of his case." 363 N.C. at 340, 678 S.E.2d at 355. Here, Zow has the opportunity for his state law wrongful discharge or tortious interference claims to be evaluated by the court on the merits, which precludes him from bringing a fruits of labor constitutional claim.

### 3. Count III - Wrongful Discharge in Violation of the North Carolina Constitution Article I § 19 Equal Protection Clause

In addition to arguing that Count III is barred by the relevant immunities discussed above, Defendants contend that Zow has failed to state an equal protection claim because he has not alleged he was treated differently than others similarly situated. Defs.' Mem. [DE-51] at 28–29. Zow argues that he can assert a claim under *Corum*, and the caselaw on federal Equal Protection Clause claims does not apply to such claims under the North Carolina Constitution. Pl.'s Mem. [DE-82] at 22–23.

Article I, Section 19 of the North Carolina Constitution provides that "[n]o person shall be denied the equal protection of the laws[.]" North Carolina courts apply the same equal protection analysis as the federal courts. *See State v. Fritsche*, 283 N.C. App. 411, 416, 872 S.E.2d 838, 843 (N.C. Ct. App. 2022) (citation omitted). In order to state an equal protection claim, the plaintiff "must identify a class of similarly situated persons who are treated dissimilarly." *Albert v. City of Raleigh*, 893 S.E.2d 572 (N.C. Ct. App. 2023) (citation omitted). Individuals are "similarly situated" only if they "are similar in all" relevant respects. *See Ford v. Northam*, No. 7:22-CV-00122, 2023 WL 2767780, at *20 (W.D. Va. Mar. 31, 2023) (quoting *Van Der Linde Housing, Inc. v. Rivanna Solid Waste Auth.*, 507 F.3d 290, 293 (4th Cir. 2007)), *aff'd*, No. 23-6410, 2023 WL 6057493 (4th Cir. Sept. 18, 2023).

Plaintiff alleges that the class of similarly situated persons are vaccinated employees who are not subjected to the same travel-related requirements as unvaccinated employees. Am. Compl. [DE-23] ¶¶ 243–48. However, courts have found that vaccinated and unvaccinated employees are not "similarly situated" for purposes of the Equal Protection Clause. *See Ford*, 2023 WL 2767780, at *20 (finding vaccinated and unvaccinated prisoners were not similarly situated for purposes of Equal Protection analysis); *Beatty v. Warren*, No. 1:22-CV-00105-MR, 2023 WL 149111, at *4 (W.D.N.C. Jan. 10, 2023) (finding that plaintiff who claimed discrimination because he was not vaccinated for Covid-19 "failed to allege that he is being treated differently from any other similarly situated, unvaccinated inmate."); *Ratcliff v. Hutchings*, No. 2:22-CV-00009-APG-NJK, 2022 WL 17742427, at *3 (D. Nev. July 20, 2022) (dismissing Equal Protection clause claim based on allegations that the unvaccinated plaintiff was treated differently from inmates that were vaccinated because the two groups were not similarly situated); *see also Middleton v. Pan*, No. CV 16-5224-SVW (AGR), 2016 WL 11518596, at *8 (C.D. Cal. Dec. 15, 2016) ("Children who

31

are vaccinated are not similarly situated to children who are not vaccinated."), *adopted by* 2017 WL 10543984 (C.D. Cal. July 13, 2017). Accordingly, Zow has failed to state an Equal Protection claim.

### 4. Count IV - Tortious Interference with Economic Relations

In addition to arguing that Count IV is barred by the relevant immunities discussed above, Defendants contend that Zow has failed to state a claim for tortious interference. Defs.' Mem. [DE-51] at 29–30. Zow did not respond to this argument.

In order to state a claim for tortious interference with prospective economic advantage, a plaintiff must plausibly allege the following elements: "1) a valid contract would have existed between plaintiff and a third party but for defendant's conduct; 2) defendant maliciously induced the third party to not enter into the contract; and 3) defendant thereby proximately caused plaintiff to suffer actual damages." *Nance v. Ingram*, No. 7:14-CV-9-FL, 2015 WL 5719590, at *8 (E.D.N.C. Sept. 29, 2015) (quoting *SAS Inst. Inc. v. World Programming Ltd.*, 64 F.Supp.3d 755, 780 (E.D.N.C. 2014); and then citing *Spartan Equip. Co. v. Air Placement Equip. Co.*, 263 N.C. 549, 559 (1965)). Zow alleges that Akinleye executed the employment agreement between Zow and NCCU but later caused NCCU to sever its employment relationship with Zow. Am. Compl. [DE-23] ¶¶ 253–54. Zow alleged that he had an existing contract with NCCU, not a prospective one, and thus, Zow has failed to state a claim. *See Lamm v. Branch Banking & Tr. Co.*, No. 4:14-CV-219-FL, 2016 WL 3983446, at *8 (E.D.N.C. July 25, 2016) (finding plaintiff failed to state a claim for tortious interference with economic relations and prospective economic relations because existing contracts cannot serve as a basis for the claim), *aff'd*, 750 F. App'x 189 (4th Cir. 2018).

To the extent Zow attempts to bring a claim for tortious interference with contract, it likewise fails. To state a claim for tortious interference with contract, a plaintiff must allege the

following elements: "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to the plaintiff." *Id.* at *5 (quoting *Embree Const. Grp., Inc. v. Rafcor, Inc.*, 330 N.C. 487, 498 (1992)). Zow asserts this claim against NCCU and Akinleye. Am. Compl. [DE-23] at 69. NCCU cannot tortiously interfere with its own contract for purposes of a tortious interference claim. *See Waters v. Collins & Aikman Prod. Co.*, 208 F. Supp. 2d 593, 596 (W.D.N.C. 2002) ("North Carolina decisions and federal case law interpreting North Carolina law have held consistently that a party to a contract cannot tortiously interfere with that contract.") (citing *Wagoner v. Elkin City Schools' Bd. of Ed.*, 113 N.C. App. 579, 587, 440 S.E.2d 119 (1994)). Furthermore, Zow alleged that "Akinleye made the offer and executed the employment agreement between NCCU and Plaintiff," Am. Compl. [DE-23] ¶ 253; thus, Akinleye, as an agent of NCCU in executing the contract, cannot be liable for tortious interference. *See id.* ("Where a maker interferes with a contract, the cause of action is one for "breach[.]"). Accordingly, Count IV should be dismissed for failure to state a claim.

### 5. Count V - Right to Refuse Unwanted and Medically Unnecessary Care

Defendants contend Zow has failed to state a claim for violation of his right to refuse unwanted and medically unnecessary care because he attempts to impermissibly plead this cause as a direct federal constitutional claim under the Ninth and Fourteenth Amendments of the U.S. Constitution, and even if the court construed this as a § 1983 claim, NCCU and its officials are protected by immunity or are not "persons" under § 1983. Defs.' Mem. [DE-51] at 30–31. Zow argues that his claim should be construed as a § 1983 claim and that immunity does not bar the claim. Pl.'s Mem. [DE-82] at 22–24.

33

Zow alleges that NCCU's Get Vaccinated or Get Tested policy and the Travel Memo required him to take either an experimental injection or experimental viral test without his consent in violation of his right to privacy and his right to refuse unwanted medical care under the Ninth and Fourteenth Amendments. Am. Compl. [DE-23] ¶¶ 265–73. There is no direct cause of action under the Ninth or Fourteenth Amendments. *See Futrell v. Cooper*, No. 3:20-CV-00543-MR, 2021 WL 1239823, at \*2 (W.D.N.C. Apr. 2, 2021) (discussing Ninth Amendment) (citing *Wohlford v. U.S. Dep't of Agriculture*, 842 F.2d 1293, 1293 (4th Cir. 1988)); *Weathers v. Univ. of N.C. at Chapel Hill*, No. 1:12-CV-1059, 2013 WL 5462300, at \*7 (M.D.N.C. Sept. 30, 2013) (discussing Fourteenth Amendment) (citing *Hughes v. Bedsole,* 48 F.3d 1376, 1383 n.6 (4th Cir.1995)), *aff'd*, 578 F. App'x 300 (4th Cir. 2014). "Instead, § 1983 provides a statutory cause of action for all citizens injured by an abridgment of the protections contained in the Constitution, including the Equal Protection and Due Process Clauses of the Fourteenth Amendment." *Weathers*, 2013 WL 5462300, at \*7 (quoting *Costello v. Univ. of N.C. at Greensboro,* 394 F. Supp. 2d 752, 759 (M.D.N.C. 2005)).

Were the court to construe the claim as one under § 1983, the Ninth Amendment claim would still fail because "the Ninth Amendment creates no constitutional rights" and "cannot support a § 1983" claim. *Id.* (citing *James-Bey v. N.C. Dep't of Public Safety*, 1:19-CV-00020-FDW, 2019 WL 5198490, at \*4 (W.D.N.C. Oct. 15, 2019) (dismissing § 1983 claim on initial review because the Ninth Amendment does not confer substantive rights and cannot form the basis of a § 1983 action)). The Supreme Court has recognized a "liberty interest" under the Due Process Clause of the Fourteenth Amendment in refusing medical treatment. *See Cruzan by Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990) (citing *Vitek v. Jones*, 445 U.S. 480, 494 (1980) (transfer to mental hospital coupled with mandatory behavior modification treatment

implicated liberty interests); *Parham v. J.R.,* 442 U.S. 584, 600 (1979) ("[A] child, in common with adults, has a substantial liberty interest in not being confined unnecessarily for medical treatment")). However, as explained above, NCCU is not a "person" for purposes of § 1983, so the claim as to NCCU must be dismissed. *See Raiford,* 2012 WL 12883770, at *3 ("NCCU is not a 'person' who can be sued under 42 U.S.C. § 1983[.]"). Zow also alleges Akinleye and Hill violated his right to refuse medical treatment, and Defendants contend that applicable immunities bar any claim, Defs.' Mem. [DE-51] at 31.

Zow argues that this claim is asserted against Akinleye and Hill in their in individual capacities for compensatory damages. Pl.'s Mem. [DE-82] at 23. Although the caption of Zow's complaint indicates Akinleye and Hill are sued in their official and individual capacities, the body of the complaint does not so specify. "[T]he Supreme Court has cautioned that allowing an action to proceed simply because the complaint names a state official in his or her individual capacity 'would be to adhere to an empty formalism and to undermine the principle . . . that Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction.'" *Martin v. Wood,* 772 F.3d 192, 195 (4th Cir. 2014) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 270 (1997)). The Fourth Circuit has provided a standard for courts to apply when a plaintiff does not specifically allege capacity:

> [W]hen a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity. One factor indicating that suit has been filed in such a manner might be the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom, or the lack of indicia of such a policy or custom on the face of the complaint. *See Hill v. Shelander,* 924 F.2d 1370, 1374 (7th Cir. 1991) (finding a personal capacity claim where "the unconstitutional conduct alleged involves [the defendant's] individual actions and nowhere alludes to an official policy or custom that would shield him from individual culpability"); *see also Conner,* 847 F.2d at 394 n.8. Another indication that suit has been brought against a state actor personally may be a plaintiff's request for compensatory or punitive damages, since

35

such relief is unavailable in official capacity suits. *See, e.g., Shabazz v. Coughlin,* 852 F.2d 697, 700 (2d Cir.1988); *Pride v. Does,* 997 F.2d 712, 715 (10th Cir.1993); *Price,* 928 F.2d at 828; *Gregory,* 843 F.2d at 119–20; *Hill,* 924 F.2d at 1374. The nature of any defenses raised in response to the complaint is an additional relevant factor. Because qualified immunity is available only in a personal capacity suit, *Kentucky v. Graham,* 473 U.S. 159, 167, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985), the assertion of that defense indicates that the defendant interpreted the plaintiff's action as being against him personally. *See Conner,* 847 F.2d at 394; *Lundgren,* 814 F.2d at 604. Throughout, the underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly.

*Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995).

Here, Zow's claim focuses on "NCCU's coercive policies 'Get Vaccinated or Get Tested Weekly' . . . and the Travel Memo," the effect of which Zow alleges was to deprive him of the ability to refuse unwanted medical care; he urges application of strict scrutiny to these "state polic[ies]"; and he asserts that the Board, Hans, NCCU, and Hill sanctioned the testing mandates. Am. Compl. [DE-23] ¶¶ 265, 271–72. Zow's claim targets the policies of the Board and NCCU and Akinleye's and Hill's enforcement of the policies, which suggests it should be construed as an official capacity claim. Zow expressly requests only "Declaratory Judgment" as relief with respect to this count and does not request compensatory damages. *Id.* ¶ 273. Finally, as Zow recognized, Pl.'s Mem. [DE-82] at 23, Defendants did not argue that Akinleye and Hill were entitled to qualified immunity on this claim, which suggests they did not interpret it as an individual capacity claim. Under the factors set forth in *Biggs*, the court should construe Count V as an official capacity claim against Akinleye and Hill.

As discussed above, official capacity claims against Akinleye and Hill are claims against NCCU as Akinleye's and Hill's employer, *Keith-Foust*, 2016 WL 4256952, at *13, and *Ex parte Young* does not save the claim where Zow's request for declaratory relief does not address an

Case 5:23-cv-00290-M-RJ   Document 102   Filed 02/12/24   Page 36 of 48

ongoing violation and is not prospective but rather addresses past conduct. *See supra* § D.1.i.

Accordingly, Zow's Count V claim should be dismissed.

### 6. Count VI - Emergency Use Authorization 21 U.S.C. § 360bbb-3

Defendants contend that Zow has failed to state a claim under the EUA provisions because the statute does not prevent employers from requiring employees to get vaccinated or get tested, and alternatively there is not private right of action for such a claim. Defs.' Mem. [DE-51] at 32. Zow argues that the EUA applies to Defendants and contains an implied right of action. Pl.'s Mem. [DE-82] at 24–27.

The EUA provides that the Secretary of Health and Human Services "may authorize the introduction into interstate commerce, during the effective period of a declaration under subsection (b), of a drug, device, or biological product intended for use in an actual or potential emergency . . . ." 21 U.S.C. § 360bbb-3(a)(1). The EUA also provides for the promulgation of "[a]ppropriate conditions designed to ensure that individuals to whom the product is administered are informed . . . of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks." *Id.* § 360bbb-3(e)(1)(A)(ii)(III).

Zow alleges that the Get Vaccinated or Get Tested policy, the Travel Memo, and the September 7, 2021 letter reprimanding Zow for violating the Travel Memo all violate the EUA statute's provision that he be allowed to refuse the Covid-19 vaccination and viral tests. Am. Compl. [DE-23] ¶¶ 274–92. However, even assuming Zow is correct, § 360bbb-3 provides no private right of action. *See Bridges v. Houston Methodist Hosp.*, 543 F. Supp. 3d 525, 527 (S.D. Tex. June 12, 2021) (plaintiff's claim that employer's policy requiring employees to be vaccinated against COVID-19 violates 21 U.S.C. § 360bbb-3 failed because the provision "does not confer a

37

private opportunity to sue the government, employer, or worker"), *aff'd*, 2022 WL 2116213 (5th Cir. June 13, 2022); *McArthur v. Brabrand*, 610 F. Supp. 3d 822, 847 (E.D. Va. 2022) ("any proceedings under the Federal Food, Drug, and Cosmetic Act, of which the EUA is a part, must be brought 'by and in the name of the United States,' and not as private actions." (citing 21 U.S.C. § 337(a)). Zow's attempt to distinguish *Bridges* as involving a private employer fails where courts have reached the same conclusion as to public employers such as a school district and school superintendent. *See Miller v. Farris*, No. CV 21-9551-SSS (AS), 2023 WL 4680370, at *10 (C.D. Cal. June 14, 2023) ("Section 360bbb-3, a provision of the Federal Food, Drug, and Cosmetic Act [], confers powers and responsibilities to the Secretary of Health and Human Services in an emergency. This section does not provide a private right of action for Plaintiff to sue Defendants.") (citing *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 109 (2014) ("Private parties may not bring enforcement suits [under FDCA].")), *report and recommendation adopted sub nom. Miller v. Ferris*, 2023 WL 4850749 (C.D. Cal. July 28, 2023). Finally, Zow contends the EUA statute contains an implied private right of action, but courts "will not recognize an implied right of action under a statute 'where the text and structure of [the] statute provide no indication that Congress intend[ed] to create new individual rights,'" *Clear Sky Car Wash LLC v. City of Chesapeake, Va.*, 743 F.3d 438, 443–44 (4th Cir. 2014) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002)). Zow points to nothing in the statute that would indicate an intent to create a private right of action. Accordingly, this claim should be dismissed.

### 7. Count VII - ADA Retaliation Claim

Defendants contend that Zow has failed to state a claim under the ADA because the claim is untimely, the individual defendants (Akinleye and Hill) are not liable for ADA violations, and Zow is not "disabled" under the ADA. Defs.' Mem. [DE-51] at 33–36. Zow argues that his claim

38

should not be dismissed as untimely, he has stated an ADA retaliation claim, and the official capacity claims should not be dismissed. Pl.'s Mem. [DE-82] at 27–32.

First, Defendants are correct that individuals are not liable under the ADA, so the ADA claim should be dismissed as to Akinleye and Hill. *See Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999) (concluding the ADA does not permit actions against individual defendants for retaliation). Additionally, where Zow asserted this claim against NCCU, his official capacity claims against Akinleye and Hill are redundant and should be dismissed. *See Richardson v. Clarke*, No. 3:18CV23-HEH, 2020 WL 4758361, at *5 (E.D. Va. Aug. 17, 2020) (dismissing official capacity ADA claims as redundant).

Next, Defendants' argument that Zow failed to state an ADA retaliation claim because he is not "disabled" under the ADA lacks merit. Under the ADA, "[n]o person shall discriminate against any individual because such has opposed any act or practice made unlawful by this chapter . . . ." 42 U.S.C. § 12203(a). Because the retaliation provision protects "any individual," *id.*, "[t]his basis of recovery does not require that the claimant be disabled." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 391 (4th Cir. 2001). Defendants cite *Schneider v. Cnty. of Fairfax*, No. 1:22-CV-871-LMB-WEF, 2023 WL 2333305, at *3–5 (E.D. Va. Mar. 2, 2023), for the proposition that "[m]erely requiring [p]laintiff to follow a COVID-19 safety policy applicable to all employees does not support the inference that [the employer] classified [p]laintiff as disabled under [the] ADA." Defs.' Mem. [DE-51] at 35. However, this analysis in *Schneider* was evaluating an ADA discrimination, not retaliation, claim. *See Schneider*, 2023 WL 2333305, at *3–5. Because being disabled is not necessary to state a retaliation claim, Defendants' argument fails.

Defendants recast the argument in their reply brief and contend that Zow has failed to state an ADA retaliation claim because he did not engage in protected activity under the ADA. Defs.'

39

Reply [DE-86] at 10–11. To state a claim for ADA retaliation, a complaint must allege "(1) that [a plaintiff] engaged in protected conduct; (2) suffered an adverse action, and (3) that a causal link exists between the protected conduct and the adverse action." *Schneider*, 2023 WL 2333305, at *5. The *Schneider* court explained what is considered "protected conduct" under the ADA as follows:

> Although protected conduct under the ADA includes an employee's opposition to "any act or practice made unlawful by" the ADA, 42 U.S.C. § 12203, the ADA does not require a plaintiff "to prove the conduct he opposed was actually an ADA violation." <u>Reynolds v. Am. Nat. Red Cross</u>, 701 F.3d 143, 154 (4th Cir. 2012). Instead, a plaintiff "must demonstrate that he had 'a reasonable, good faith belief' that the [employer's] conduct violated the ADA." <u>Thompson v. City of Charlotte</u>, 827 Fed. Appx. 277, 279 (4th Cir. 2020).

*Id.*

Zow alleges he engaged in protected conduct by requesting an accommodation, i.e., he submitted an affidavit of medical exemption to Human Resources seeking ADA protection as a result of the Travel Memo's requirement that unvaccinated employees submit to viral testing. Am. Compl. [DE-23] ¶ 299. Defendants rely on *Jorgenson v. Conduent Transp. Sols., Inc.* for the proposition that a "[p]laintiff's simple assertion that he was opposing discrimination under the ADA does not amount to a good faith belief that he was engaged in was protected activity, absent some reasonable basis to believe there was a viable claim of disability discrimination." No. CV-SAG-22-01648, 2023 WL 1472022, at *6 (D. Md. Feb. 2, 2023), *aff'd*, No. 23-1198, 2023 WL 4105705 (4th Cir. June 21, 2023). But Zow does not simply allege that he opposed the Travel Memo policy; rather, he alleges that he requested an accommodation in the form of a medical exemption, which he also alleges had been previously accepted. Am. Compl. [DE-23] ¶¶ 299–300. "Protected activity includes the right to . . . request an accommodation." *McCoy v. S.C. Pub. Serv. Auth.*, No. 2:22-CV-02835-DCN-MHC, 2022 WL 22257017, at *3 (D.S.C. Dec. 1,

40

2022) (quoting *Thomas v. City of Annapolis, Md.*, 851 F. App'x 341, 350 (4th Cir. 2021)), *adopted sub nom. McCoy v. S.C. Pub. Auth.*, 2022 WL 22257002 (D.S.C. Dec. 27, 2022). Accordingly, Zow's allegations are sufficient to state an ADA retaliation claim.

Finally, turning to the timeliness of the ADA claim, Defendants contend the claim is time barred because none of the employment actions about which Zow complains occurred within 180 days preceding the July 14, 2022 filing of Zow's EEOC charge. Defs.' Mem. [DE-51] at 33–34. Zow contends in his response brief that the time limit for filing is a claim processing rule and is not jurisdictional, any timeliness argument was waived by the EEOC's failure to enforce the filing deadline, and equitable tolling applies. Pl.'s Mem. [DE-82] at 28–29.

Zow alleges in the amended complaint that on September 7, 2021, he engaged in protected activity by requesting an accommodation, i.e., he submitted an affidavit of medical exemption to Human Resources seeking ADA protection as a result of the Travel Memo's requirement that unvaccinated employees submit to viral testing. Am. Compl. [DE-23] ¶ 299. Zow further alleges that as a result of this protected activity, he suffered the following adverse actions:

> 1) On September 7, 2021, Chancellor Akinleye transmitted a disciplinary letter against Plaintiff for alleged violation August 5, 2021 Travel Memo (submission of a negative COVID-19 viral test). 2) On September 7, 2021, Defendant NCCU HR employee [] Harris arbitrarily and capriciously decided to summarily reject Plaintiff's PCR medical exemption affidavit after [another] HR employee [] accepted a similar "proof of vaccine" Medical Exemption affidavit, without question, from Plaintiff just two weeks earlier. 3) Defendant HR employee Ms. Harris requested Plaintiff to have his doctor fax the medical exemption directly from the doctor's office. Plaintiff made the request to his doctor and Ms. Harris received the fax but then arbitrarily rejected the second medical exemption document. 4) On September 13, 2021, HR continued to refuse to engage in a good faith interactive process as required by EEOC guidelines by failing to respond to Plaintiff's September 13, 2021 complaint. 5) On September 14, 2021, Defendant Chancellor Akinleye telephoned Plaintiff while he was on sick leave and threatened Plaintiff that he was "placing his job in jeopardy". 6) On September 29, 2021, Plaintiff received a letter from HR threatening termination with false allegations, misrepresentations and inaccurate facts related to Plaintiff's request for accommodation. 7) Plaintiff was terminated on October 1, 2021.

*Id.* ¶ 300 (internal footnote omitted).

Before a plaintiff may file a suit under the ADA, he is required to exhaust his administrative remedies by filing a charge of discrimination with the EEOC. *Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012) (citing 42 U.S.C. § 2000e-5(b), (f)(1)). The charge must be filed with the EEOC "within 180 days of the alleged unlawful employment practice, unless within that period the claimant had initially instituted proceedings with a state or local agency, in which case the charge must be filed with the EEOC within 300 days." *McCullough v. Branch Banking & Tr. Co.*, 35 F.3d 127, 131 (4th Cir. 1994). Next, "[w]ithin 90 days of receipt of a right to sue letter from the EEOC, the aggrieved party must bring a civil action based upon 'the alleged unlawful employment practice,'" 42 U.S.C. § 2000e-5(f)(1), and a claim is time barred if it is not filed within the ninety days. *Wilson v. Daly Seven, Inc.*, No. 5:15-CV-610-FL, 2018 WL 1800853, at *3 (E.D.N.C. Apr. 16, 2018), *aff'd*, 740 F. App'x 286 (4th Cir. 2018). In *Fort Bend County v. Davis*, the Supreme Court held that while the administrative exhaustion requirement is not a jurisdictional issue and thus may be waived, it is mandatory and can serve as grounds for dismissal when timely raised by a defendant. 587 U.S. — , 139 S. Ct. 1843, 1850–52 (2019).

Zow filed a charge with the EEOC on July 14, 2022. Am. Compl. [DE-23] ¶ 326. He did not institute proceedings with a state or local agency, so the charge was required to be filed with the EEOC within 180 days of the alleged unemployment practice. *McCullough*, 35 F.3d at 131. Thus, the July 14, 2022 charge covers conduct that occurred from 180 days before it was filed, from January 15, 2022[6] to July 14, 2022. The alleged retaliatory actions took place from September 7, 2021 through October 1, 2021, when Zow was terminated. Am. Compl. [DE-23] ¶

---

[6] Defendants mistakenly calculated the operative date as March 30, 2022, Defs.' Mem. [DE-51] at 33, which is only 106 days prior to July 14, 2022.

300.   Accordingly, all the alleged retaliatory employment actions occurred outside the 180-day window, and Zow's EEOC charge was untimely filed. *See Fullard v. City of Raleigh*, No. 2:23-CV-49-D, 2024 WL 232185, at *3 (E.D.N.C. Jan. 22, 2024) (finding EEOC charge was untimely when filed more than 180 days after the alleged retaliatory act)[7] (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–14 (2002)); *Spivey v. Rsch. Triangle Reg'l Pub. Trans. Auth.*, No. 5:14-CV-44-FL, 2015 WL 5513320, at *17 (E.D.N.C. Aug. 10, 2015) (citing *Delaware State College v. Ricks*, 449 U.S. 250, 262 (1980)), *report and recommendation adopted sub nom. Spivey v. Rsch. Triangle Reg'l Pub. Transp. Auth.*, No. 5:14-CV-44-FL, 2015 WL 5455919 (E.D.N.C. Sept. 16, 2015), *aff'd*, 633 F. App'x 839 (4th Cir. 2016).

In *Fullard*, the court rejected the same waiver argument Zow makes here—that the defendant did not object to the timeliness of the charge during the EEOC's investigation, and the EEOC issued a right to sue notice implying it did not believe the charge to be untimely. *Id.* The court explained that "the EEOC's decision to issue a right to sue notice and failure to address the timeliness of Fullard's EEOC charge do not bind this court" because it reviews the claims de novo. *Fullard*, 2024 WL 232185, at *3 (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974); *Nealon v. Stone*, 958 F.2d 584, 588 (4th Cir. 1992)). Defendants challenged the timeliness of the charge in opposing Zow's amended complaint and thus did not waive the argument. *Id.* (finding defendant did not forfeit the timeliness argument where it moved to dismiss the amended complaint and argued that the EEOC charge was untimely filed). The case of *E.E.O.C. v. Com. Off. Prod. Co.*, cited by Zow, Pl.'s Mem. [DE-82] at 28, is inapplicable because it involved the

---

[7] Although *Fullard* is a Title VII case, the same charge filing procedures and deadlines apply to the ADA. *See Wright v. Williamsburg Area Med. Assistance Corp.*, No. 4:12-CV-152, 2014 WL 1056719, at *7 (E.D. Va. Mar. 18, 2014), *aff'd*, 585 F. App'x 143 (4th Cir. 2014).

timing of charges filed where the EEOC referred a charge to a state agency under a work sharing agreement, which is not the case here. 486 U.S. 107, 111 (1988).

Zow also asks the court to apply equitable tolling should it find his charge untimely. Pl.'s Mem. [DE-82] at 29. Zow's equitable tolling argument appears to be based on Zow's claim that an EEOC employee told him on March 25, 2022, when he initially contacted the EEOC, that the charge filing deadline was 300 days. *Id.* at 28. Equitable tolling can apply to the ADA's 180-day provision for filing an EEOC charge. *Williams v. N.C. Admin. Off. of the Cts.*, 364 F. Supp. 3d 596, 604–05 (E.D.N.C. 2018) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398, (1982)). To receive the benefit of equitable tolling a plaintiff must allege "(1) extraordinary circumstances, (2) beyond [a party's] control or external to [the party's] own conduct, (3) that prevented [the party] from filing on time." *Id.* (citing *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc)). This is a "demanding" standard, and the "[p]rinciples of equitable tolling do not extend to garden variety claims of excusable neglect." *Id.* (quoting *Bratcher v. Pharm. Prod. Dev., Inc.*, 545 F. Supp. 2d 533, 543 (E.D.N.C. 2008) and *Rouse*, 339 F.3d at 246).

Zow does not allege that Defendants' conduct prevented him from timely filing his complaint. *See Olson v. Mobil Oil Corp.*, 904 F.2d 198, 201 (4th Cir. 1990) (equitable tolling applies "when an employer's reliance on the applicable statute of limitations would be inequitable, because the employer 'wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action.'") (quoting *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987)). The Fourth Circuit has recognized that "[t]he doctrine of equitable tolling applies to toll the limitations period when, due to agency error or misinformation, a complainant fails to meet the time requirements for filing an agency complaint or for filing a civil action once a right to sue letter has been issued." *Bishop v. Hazel & Thomas, PC*, 1998 WL 377912, at *2 n.3, 151 F.3d

44

1028 (4th Cir. 1998) (citations omitted). However, under circumstances similar to those here, this court has declined to apply equitable tolling where a plaintiff alleged that an unidentified EEOC employee incorrectly informed a plaintiff that she could not file an EEOC charge absent direct evidence of race discrimination. *See Donald v. Novant Health, Inc.*, -- F. Supp.3d --, No. 5:22-CV-363-D, 2023 WL 5672832, at *4 (E.D.N.C. Sept. 1, 2023). The *Donald* court determined that the alleged misinformation provided by the EEOC employee "does not qualify as an 'extraordinary' circumstance 'beyond plaintiff's control' that 'made it impossible to file' an EEOC charge within 180 days of any adverse employment action." *Id.*

In this case, Zow included no allegations whatsoever in the amended complaint that would support equitable tolling. *See Winston v. U.S. Dep't of Educ.*, No. 8:22-CV-01965-AAQ, 2023 WL 8452451, at *3 (D. Md. Dec. 6, 2023) ("[I]f, in the complaint and other materials appropriate to consider, a plaintiff alleges facts that 'support a plausible argument for equitable tolling,' then a court cannot dismiss the complaint as time barred.") (quoting *Hill v. Carvana*, No. 1:22-CV-37, 2022 WL 1604126, at *3 (M.D.N.C. Apr. 5, 2022)); *Addison-Potts v. ECU Health Med. Ctr.*, No. 4:23-CV-103-FL, 2023 WL 5183009, at *1 (E.D.N.C. Aug. 11, 2023) (dismissing claim as time barred where the allegations of the complaint established that plaintiff missed the filing deadline by one day, and plaintiff alleged no grounds for equitable tolling in the complaint), *aff'd*, No. 23-1953, 2023 WL 8826947 (4th Cir. Dec. 21, 2023). The facts on which Zow bases his argument for equitable tolling are found in his brief, not the amended complaint, and a party may not amend the pleadings through briefing. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184–85 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy.") (citing *Car Carriers, Inc. v.*

*Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)). Accordingly, the court should not apply equitable tolling to save Zow's time barred ADA claim.

### 8. Counts VIII & IX - Violation of N.C. Gen. Stat. § 116-11 and N.C. Gen. Stat. § 130A-152

Defendants contend that N.C. Gen. Stat. § 116-11 and N.C. Gen. Stat. § 130A-152 do not create a private right of action, Defs.' Mem. [DE-51] at 36–37, and Zow asks the court to imply one, Pl.'s Mem. [DE-82] at 32–33.

N.C. Gen. Stat. § 116-11 sets forth the powers and duties of the UNC Board of Governors, and among them is the power to adopt "policies and regulations as it may deem wise" for the management of all affairs of the constituent institutions. N.C. Gen. Stat. § 116-11(2). Zow alleges that the Get Vaccinated or Get Tested policy was "unwise" and beyond the powers granted to the Board. Am. Compl. [DE-23] ¶¶ 307–311.

N.C. Gen. Stat. § 130A-152 sets forth certain mandatory immunizations for children in North Carolina and provides that the Commission on Public Health may require other immunizations "upon a determination by the Commission that the immunization is in the interest of the public health." N.C. Gen. Stat. § 130A-152(a). Zow alleges that the Board's Covid-19 policy requiring vaccination or testing usurped the power of the Commission. Am. Compl. [DE-23] ¶¶ 314–24.

These statutes do not by their text create a private cause of action. North Carolina case law "generally holds that a statute allows for a private cause of action only where the legislature has expressly provided a private cause of action within the statute." *Lea v. Grier*, 156 N.C. App. 503, 508, 577 S.E.2d 411, 415 (2003) (quoting *Vanasek v. Duke Power Co.*, 132 N.C. App. 335, 339, 511 S.E.2d 41, 44 (1999)); *Smith v. Apple Computer, Inc.*, No. 3:92-CV-93-MU, 1993 WL 723478, at *3 (W.D.N.C. May 4, 1993) ("When the General Assembly intends to create a right of action,

46

it expressly says so."). Zow relies on *Williams et. al. v. Alexander County Bd. of Educ.*, 128 N.C. App. 599, 495 S.E.2d 406 (N.C. Ct. App. 1998), for the proposition that this court should imply a private right of action. Pl.'s Mem. [DE-82] at 32–33. The court in *Williams* found that N.C. Gen. Stat. § 15C–363 implicitly created a private right of action by requiring school boards to pay specific sums to certain teachers, which the court found "without a doubt" demonstrated the intent of the General Assembly to create statutory protection for teachers. *Williams*, 128 N.C. App. at 604, 495 S.E.2d at 409. The statutes here contain no indication that the state legislature intended to confer an actionable right on a plaintiff such as Zow. Accordingly, Counts VIII and IX should be dismissed for failure to state a claim.

### IV. Conclusion

For the reasons stated above, the motion to drop defendants from the amended complaint, [DE-53], and the motion for leave to file a surreply, [DE-91], are allowed, and it is recommended that the motion to dismiss, [DE-50], be allowed and the motions for default [DE-92-93], be denied as moot.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on the parties. You shall have until **Monday, February 26, 2024**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

47

If you do not file written objections to the Memorandum and Recommendation by the foregoing deadline, you will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, your failure to file written objections by the foregoing deadline may bar you from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).

Submitted, this 12th day of February 2024.

Robert B. Jones, Jr.
United States Magistrate Judge