IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:23-cv-00290-M-RJ

JAMES ZOW,

    Plaintiff,

v.

BOARD OF GOVERNORS OF THE
UNIVERSITY OF NORTH CAROLINA,
et al.,

    Defendants.

ORDER

This matter comes before the court on the Memorandum and Recommendation ("M&R") of United States Magistrate Judge Robert B. Jones, Jr. [DE 102]. Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), Magistrate Judge Jones recommends that this court grant Defendants' motion to dismiss Plaintiff's amended complaint [DE 50] and deny as moot Plaintiff's motions for default judgment [DE 92, 93]. Plaintiff timely filed an objection [DE 112]. For the following reasons, the court grants in part and denies in part Defendants' motion and denies as moot Plaintiff's motions.

    **I.    Background[1]**

Plaintiff brings suit against several public entities and numerous public employees in their individual and official capacities for alleged violations of his civil rights. He implicates his former employer, North Carolina Central University ("NCCU"), and its supervising entity, the University

---

[1] Plaintiff does not object to the majority of the magistrate judge's report regarding the factual and procedural background for this case. *See* DE 112 at 4–5. After careful review, and finding no clear error, the court adopts those portions of the report as its own and restates the relevant portions herein. With respect to the contested portions, the court has reviewed the relevant allegations de novo and modifies the magistrate judge's report so as to be consistent with the findings below.

of North Carolina ("UNC") System's Board of Governors (the "Board"). He also sues the following individuals: Peter Hans ("Hans") in his individual and official capacity as President of the UNC System; Johnson Akinleye ("Chancellor Akinleye") in his individual and official capacity as Chancellor of NCCU; Michael Hill ("Hill") in his individual and official capacity as NCCU's Chief Human Resources Officer; and various members of the Board in their official capacities. *See* DE 23. To support his suit, Plaintiff provides the following relevant allegations—as distinct from legal conclusions or unsupported inferences—which the court accepts as true at this stage of the proceedings. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

Plaintiff was employed as Chief of Staff to Chancellor Akinleye and as Assistant Secretary to the NCCU Board of Trustees from January 2018 until his employment was terminated on October 1, 2021. DE 23 ¶¶ 102, 192. On April 19, 2021, NCCU's Covid-19 Operations Continuity Committee (the "Committee") considered whether to implement a mandatory vaccination policy for students, faculty, and staff at NCCU. *Id.* ¶ 7. In preparation for the meeting or during the Committee's discussion, he "warned" his colleagues that the policy would have contradicted then-existing UNC System policy. *See* DE 23 ¶ 8. He then voted against the proposal, thereby departing from the overwhelming consensus of his colleagues. *Id.* ¶ 9. The proposal passed 20-1. *Id.*

After the vote, a joint draft letter notifying the Board as to the policy decision was circulated among select Committee members. *Id.* ¶ 121. Because of his role as Chief of Staff, Plaintiff was among those Committee members selected to review the joint letter. *See id.* The next day, on April 20, he emailed his colleagues reiterating his belief that the policy "would violate UNC System policy, federal and state laws." *Id.* ¶¶ 10–11, 122–24. Plaintiff's opposition caused Chancellor Akinleye to prevent the policy "from moving forward" and seek further guidance on its legality. *See id.* ¶¶ 123–24. Plaintiff alleges that his actions on April 19 and 20 against

implementation of the mandatory vaccination policy were protected activities subjecting him to various retaliatory employment actions beginning on May 5, 2021 until his employment was ultimately terminated on October 1, 2021. *See id.* ¶¶ 13–15.

For example, Plaintiff alleges that on July 12, 2021, when he returned to work after a vacation, Chancellor Akinleye communicated disapproval regarding Plaintiff's vaccination status. *See id.* ¶¶ 140–41. Plaintiff later received a letter from Chancellor Akinleye indicating that Plaintiff had violated the August 5, 2021 Travel Memo requiring unvaccinated employees who had traveled domestically to self-quarantine for seven days after travel and to produce a negative PCR Covid-19 test to Human Resources before returning to work. *See id.* ¶¶ 148–50, 163. Chancellor Akinleye also indicated that Plaintiff was prohibited from entering campus because he had not produced a negative test result. *Id.* ¶ 163. Plaintiff then requested a medical exemption allowing him to bypass the testing policy, but the affidavit supporting his request was rejected, despite having successfully submitted a similar medical exemption affidavit two weeks earlier. *Id.* ¶¶ 165–72.

On September 14, 2021, Chancellor Akinleye questioned Plaintiff about the status of the information required by the Travel Memo. *Id.* ¶ 182. Chancellor Akinleye warned Plaintiff that Plaintiff was "placing his job in jeopardy," to which Plaintiff replied he "would exercise his employee rights for the illegal actions of the NCCU's HR employees." *Id.* ¶¶ 182–83. Chancellor Akinleye then stated "'he didn't care what Plaintiff did' to protect his rights." *Id.* ¶ 184. Plaintiff soon received a letter from Human Resources threatening disciplinary action for his failure to produce a negative Covid-19 test after travel. *Id.* ¶ 190. Chancellor Akinleye then terminated Plaintiff's employment on October 1, 2021. *Id.* ¶ 192.

Approximately nine months later, on July 14, 2022, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 326. He received a right to sue letter on March 2, 2023. *Id.* ¶ 327. Plaintiff filed suit on May, 31, 2023. DE 1.

In his amended complaint, Plaintiff asserts claims for free speech retaliation and wrongful termination in violation of 42 U.S.C. § 1983 against NCCU, Chancellor Akinleye, and Hill (**Count I**); wrongful discharge in violation of the North Carolina Constitution Article I § 1 against NCCU and Chancellor Akinleye (**Count II**); wrongful retaliatory termination in violation of the Equal Protection Clause of the North Carolina Constitution Article I § 19 against NCCU, Chancellor Akinleye, and Hill (**Count III**); tortious interference with economic relations against NCCU and Chancellor Akinleye (**Count IV**); violation of the right to refuse unwanted and medically unnecessary care against NCCU, Chancellor Akinleye, and Hill (**Count V**); violation of the emergency use authorization provisions of 21 U.S.C. § 360bbb-3 against all Defendants (**Count VI**); retaliation in violation of the Americans with Disabilities Act ("ADA") against NCCU, Chancellor Akinleye, and Hill (**Count VII**); violation of N.C. Gen. Stat. § 116-11 against the Board, Hans, and Chancellor Akinleye (**Count VIII**); and violation of N.C. Gen. Stat. § 130A-152 against the Board, Hans, and NCCU (**Count IX**). DE 23 ¶¶ 203–325. Plaintiff seeks a declaratory judgment, compensatory and punitive damages, and reinstatement of fringe benefits, seniority, and vesting rights under North Carolina law. *Id.* at 86–88.

In response to the amended complaint, Defendants filed the instant motion to dismiss [DE 50], pursuant to Fed. R. Civ. P. 12(b)(l), (2), (4), (5), and (6). The motion is based on grounds of sovereign and Eleventh Amendment immunity; improper process, improper service, and lack of personal jurisdiction; and failure to state a claim. *See* DE 50. Plaintiff has responded [DE 82], and Defendants have replied [DE 86]. Plaintiff then received leave to file a surreply [DE 91-1].

4

Case 5:23-cv-00290-M-RJ   Document 114   Filed 03/26/24   Page 4 of 12

On December 8, 2023, Plaintiff filed motions for default judgment against Defendants Hans [DE 92] and Hill [DE 93]. The court received timely responses [DE 95, 96] and replies [DE 97, 99].

On February 12, 2024, Magistrate Judge Jones filed an M&R recommending that this court grant Defendants' motion to dismiss Plaintiff's amended complaint [DE 50] and deny as moot Plaintiff's motions for default judgment [DE 92, 93]. After several extensions, Plaintiff timely filed an objection [DE 112], to which Defendants have responded [DE 113]. The court is fully apprised to review the M&R and rule on the pending motions.

## II. Standard of Review

The court "may accept, reject, or modify, in whole or in part, the . . . recommendation[ ] . . . receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). The court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1). Absent a specific and timely objection, the court reviews only for "clear error" and need not give any explanation for adopting the recommendation. *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

A district court is "not expected to relitigate entire cases to determine the basis of a litigant's objection." *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023). "To trigger de novo review, an objecting party "must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *Id.* (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). Generally, sufficiently specific "objections identify the portions of the report to which [the pro se litigant] objected " and "articulate[] how [the litigant] believe[s] the magistrate judge's reasoning was incorrect." *See Weaver v. United States Postal Serv.*, 2024 WL 94298, at *3 (4th Cir. Jan. 9, 2024). An "objection

5

which merely restates all of the claims" can also be "sufficiently specific" if it alerts the court that "the litigant believed the magistrate judge erred in recommending dismissal of those claims." *Elijah*, 66 F.4th at 460 (cleaned up). However, "an objection stating only 'I object' preserves no issue for review." *Id.* (quoting *Lockert v. Faulkner*, 843 F.2d 1015, 1019 (7th Cir. 1988)).

### III. Discussion

#### A. Count I

Under 42 U.S.C. § 1983, Plaintiff brings a First Amendment retaliation claim against Chancellor Akinleye and CHRO Hill in their individual capacities, alleging that they unlawfully retaliated against him for voting against and questioning the legality of the mandatory vaccination policy. The magistrate judge recommended dismissal of his claim because Plaintiff's oppositional speech was constitutionally unprotected. He was, the magistrate judge concluded, a public employee speaking pursuant to his official duties, rather than as a private citizen. *See* DE 102 at 22–23. Plaintiff objects to this legal conclusion and the recommendation to dismiss his § 1983 claim against Chancellor Akinleye and CHRO Hill. *See* DE 112 at 6–7.

"When a government employee claims that he was disciplined because of his speech, [courts] use a three-prong test to determine if the employee's rights under the First Amendment were violated." *Porter v. Bd. of Trustees of N. Carolina State Univ.*, 72 F.4th 573, 582 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 693 (2024) (citation omitted). As relevant to the dispute here, the first prong asks "whether the speech was made as a citizen or pursuant to the employee's duties." *Id.* (cleaned up). If the speech "owes its existence to [the] public employee's professional responsibilities," its restriction "simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Garcetti v. Ceballos*, 547 U.S. 410, 421–22 (2006).

"Determining whether speech was made in the course of an employee's job requires courts 'to engage in a "practical" inquiry into the employee's "daily professional activities."'" *Crouse v.*

6

*Town of Moncks Corner*, 848 F.3d 576, 584 (4th Cir. 2017) (quoting *Hunter v. Town of Mocksville*, 789 F.3d 389, 397 (4th Cir. 2015)). Whether the speech took place "at his workplace" and the extent to which his speech coincided with his "formal job description[]" are relevant factors. *Id.*

Plaintiff has not plausibly alleged that his speech occurred in any other context besides "the normal course of [his] ordinary duties" as a public employee. *See Hunter*, 789 F.3d at 397. Plaintiff alleges his speech consisted of the following: On April 19, he "warned" the Committee that the policy would have contradicted then-existing institutional policy. DE 23 ¶ 8. He then voted against the proposal. *Id.* ¶ 9. The next day, he emailed his fellow Committee members reiterating his belief that the policy "would violate UNC System policy, federal and state laws." *Id.* ¶¶ 10–11, 122–24.

These allegations plainly show Plaintiff raised his concerns and casted his vote in connection with and during an official workplace meeting determining an official workplace policy. *Id.* ¶¶ 8–11, 122. Plaintiff also alleges that he had a "professional obligation as Chief of Staff" to oppose the policy. *Id.* ¶ 124. He did not allegedly express his concerns or circulated his dissenting email to any external stakeholders. Rather, his warning and dissenting email were "wholly internal communications" to his fellow Committee members and his supervisor. *Porter*, 72 F.4th at 584 (holding that expressing concern during department meeting and faculty-wide email criticizing colleague were unprotected).

Plaintiff contends that he was speaking "as a private citizen" when voicing his opposition because he was departing from his responsibility as a member of the executive leadership team to support the ultimate policy position of the chief executive, i.e., Chancellor Akinleye. *See* DE 112 at 6. This argument fails for at least two reasons. First, Plaintiff fails to point to any allegations in the amended complaint indicating that he departed from the Chancellor's settled policy position. In fact, he alleges that his speech persuaded the Chancellor "from moving forward" with the policy

7

and caused the Chancellor to reevaluate the policy's legality. DE 23 ¶¶ 123–24. Second, a public employee's speech does not gain constitutional protection simply because it departs from his employer's legitimate expectations. "Government employees do not have a constitutional 'right to perform their jobs however they see fit.'" *Crouse*, 848 F.3d at 584. Because Plaintiff's speech is unprotected, Plaintiff has failed to state a plausible First Amendment retaliation claim.[2]

### B. Count VII

In Count VII, Plaintiff brings an ADA retaliation claim alleging that NCCU, among others, subjected him to several adverse actions and ultimately terminated him for requesting a medical exemption to his employer's viral testing policy. The magistrate judge recommended dismissal of Plaintiff's claim against NCCU because he failed to file his EEOC charge within the 180-day statutory window. DE 102 at 42–43. The magistrate judge also concluded that equitable tolling does not apply based on Plaintiff's claim that an EEOC employee incorrectly advised him that his filing deadline was 300 days. *Id.* at 44–46. Plaintiff objects to the "finding that equitable tolling" of his ADA retaliation claim against NCCU "should not apply." *See* DE 112 at 7.

The 180-day time requirement for filing discrimination charges can be equitably tolled, although only in rare cases. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398, (1982). "Equitable tolling requires a litigant to establish: '(1) that [he] has been pursuing [his] rights diligently, and (2) that some extraordinary circumstance stood in [his] way and prevented timely

---

[2] Plaintiff objects to the "finding of non-prospective as his employment record at NCCU is mark on your record because of the adverse actions" of his employer. DE 112 at 7. Plaintiff's objection arguably fails to identify the "true ground for the objection" or any claims to which it pertains. *See Elijah*, 66 F.4th at 460. However, the court liberally construes the objection as one contesting the magistrate judge's finding that the Eleventh Amendment bars Plaintiff's First Amendment retaliation claim since "[t]he declaratory relief [he] seeks does not address an ongoing violation and is not prospective but rather addresses past conduct." DE 102 at 15. As the magistrate judge noted, however, since Plaintiff fails to state a plausible claim to relief, his First Amendment retaliation claim is subject to dismissal regardless of the application of sovereign immunity.

8

filing." *Donald v. Novant Health, Inc.*, No. 5:22-CV-363-D, 2023 WL 5672832, at *4 (E.D.N.C. Sept. 1, 2023) (quoting *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 256 (2016)). "Equitable tolling is a narrow limitations exception," as the purpose of "statutes of limitations provide will be lost if their applicability is 'up for grabs' in every case." *Id.* (quoting *Olson v. Mobil Oil Corp.*, 904 F.2d 198, 201 (4th Cir. 1990)).

To support the application of equitable tolling, Plaintiff claims that he initially contacted the EEOC about filing a charge on March 25, 2022 and received telephonic instruction from an EEOC employee that the applicable charge filing deadline was 300 days. These allegations, however, do not appear in Plaintiff's amended complaint. *See* DE 23. Rather, they appear only in his response. *See* DE 82 at 28–29. The court cannot consider allegations that do not appear in the operative complaint at this stage of the proceedings. Based on Plaintiff's failure to allege facts supporting equitable tolling, his ADA claim must fail based on the applicable statute of limitations. *See* DE 102 at 42–43.

Even if the court allows Plaintiff to incorporate his supporting allegations into his amended complaint, his equitable tolling argument would still fail as a matter of law. In *Donald v. Novant Health*, the district court considered a similar equitable tolling argument and found that the doctrine does not apply despite agency misinformation allegedly preventing the litigant from timely filing. *See* 2023 WL 5672832, at *4. There, the claimant alleged that an EEOC employee misinformed her that she could not file an EEOC charge absent direct evidence of race discrimination. *Id.* The court held that "the alleged statement of the unidentified EEOC employee does not qualify as an 'extraordinary' circumstance 'beyond plaintiff's control' that 'made it impossible to file' an EEOC charge within 180 days of any adverse employment action." *Id.* Other courts have held similarly, rejecting the notion that "an accurate, but incomplete, oral statement

9

by the EEOC can be the basis for equitable tolling." *See Conaway v. Control Data Corp.*, 955 F.2d 358, 363 (5th Cir. 1992) (noting the "great potential for abuse" if courts allow "a plaintiff equitably to toll a time limitation based on incomplete information provided in a telephone conversation").

Similarly, Plaintiff's allegation of agency misinformation cannot plausibly support equitable tolling. Just as the inaccurate advice in *Donald* did not qualify as an extraordinary circumstance rendering timely filing impossible, the EEOC employee's alleged misstatement enlarging Plaintiff's perceived filing time was not an "extraordinary circumstance" that "made it impossible to file" a timely EEOC charge. 2023 WL 5672832, at *4. Indeed, throughout the limitations period, Plaintiff had durable access to numerous free sources containing accurate information regarding the applicable filing deadline. *See, e.g.*, *Guide to Disability Rights Laws*, ADA.GOV, https://www.ada.gov/resources/disability-rights-guide/#americans-with-disabilities-act-ada (Feb. 28, 2020); *Time Limits for Filing a Charge*, U.S. EMP. OPP. COMM'N, https://www.eeoc.gov/time-limits-filing-charge (last visited Mar. 25, 2024). Moreover, Plaintiff allegedly waited approximately 175 days after NCCU terminated his employment to contact the EEOC about his filing deadline. This period of personal delay left him with approximately 5 days before he could timely file his discrimination charge. The alleged circumstances causing his delay in filing were therefore plausibly neither "extraordinary" nor "beyond [his] control." *See Donald*, 2023 WL 5672832, at *4; *Conaway*, 955 F.2d at 363.

### C. Remaining State Law Claims

Plaintiff brings five claims arising under state law. As indicated above, Counts II and III are state constitutional wrongful and retaliatory termination claims. Count IV is a claim for tortious interference with economic relations. Count VIII and IX are claims for violations of N.C. Gen. Stat. §§ 116-11 (powers and duties of the UNC Board of Governors) & 130A-152(a) (mandatory

10

Case 5:23-cv-00290-M-RJ   Document 114   Filed 03/26/24   Page 10 of 12

immunizations for children). The magistrate judge recommended dismissal based primarily on sovereign immunity and claim duplicity. *See* DE 102 at 16–20. Plaintiff broadly objects to the "finding related to the counts above and incorporates by reference his arguments" already presented to the magistrate judge. *See* DE 112 at 7. To the extent Plaintiff has failed to state his claims arising under federal law,[3] the court no longer has a compelling reason to retain supplemental jurisdiction over Plaintiff's remaining state law claims and consider his objection.

On its own motion, a district court may raise issues regarding subject matter jurisdiction. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977). The court "may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). The court "maintains wide discretion to dismiss the supplemental state law claims," even when "it properly has supplemental jurisdiction." *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 553 n.4 (4th Cir. 2006) (internal quotation marks omitted). In exercising this discretion, a district court must consider "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).

Plaintiff's remaining claims against Defendants do not present any important or overriding issues of federal policy. They predominately require the interpretation and application of state constitutional, statutory, and common law. In this context, "dismissal is appropriate because

---

[3] Subject matter jurisdiction rests on Plaintiff's First Amendment and ADA retaliation claims as well as his claims for violations of the Ninth and Fourteenth Amendments and 21 U.S.C. § 360bbb-3 (authorization for medical products for use in emergencies). *See* DE 23 ¶ 55. This court has explained why Plaintiff's retaliation claims fail as a matter of law. The magistrate judge has provided several uncontested bases for its recommendation dismissing Plaintiff's claim arising under the Ninth and Fourteenth Amendments and 21 U.S.C. § 360bbb-3. *See* DE 102 at 20, 33–38. To the extent this court finds no clear error in, and thus accepts, the recommendation to dismiss Ninth and Fourteenth Amendments and § 360bbb-3 claims, this court's jurisdiction over this case would rest solely on the provision of supplemental jurisdiction under 42 U.S.C. § 1367.

11

district courts should avoid 'needless decisions of state law both as a matter of comity and to promote justice between the parties." *Judson v. Bd. of Supervisors of Mathews Cnty.*, 436 F. Supp. 3d 852, 869 (E.D. Va. 2020), *aff'd*, 828 F. App'x 180 (4th Cir. 2020) (cleaned up) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Moreover, declining jurisdiction over the remaining claims would not significantly inconvenience or unfairly prejudice the parties. In fact, this case has not yet progressed past the pleading stage. Discovery has been stayed due to the pending motion to dismiss, and no trial date has been set. The court thus declines supplemental jurisdiction over the remaining state law claims.

## IV. Conclusion

With respect to the uncontested portions of the M&R, after careful review, the court finds no clear error and adopts the findings and recommendations of the magistrate judge as its own. With respect to the contested portions, the court has conducted de novo review and accepts the magistrate judge's findings and recommendations as to those portions, subject to appropriate modification so as to be consistent with the court's findings herein.

Accordingly, Defendants' motion to dismiss the amended complaint [DE 50] is GRANTED IN PART and DENIED IN PART. The court dismisses without prejudice the claims in Counts II–IV, VIII, and IX so that Plaintiff can pursue them in state court if he wishes to do so. Plaintiff's motions for default judgment [DE 92, 93] are DENIED AS MOOT.

The clerk is directed to close this case.

SO ORDERED this 26th day of March, 2024.

*Richard E Myers II*
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE